**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| STATON TECHIYA, LLC and SYNERGY IP CORPORATION, | CASE NO. 2:21-CV-00413-JRG-RSP (LEAD CASE) |
| Plaintiffs, | |
| v. | CASE NO. 2:22-CV-00053-JRG-RSP (MEMBER CASE) |
| SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**SAMSUNG'S MOTION TO EXCLUDE CERTAIN
DAMAGES EXPERT OPINIONS OF STEPHEN E. DELL**

i

████████████████████████████████████████████

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

III.    ARGUMENT ...................................................................................................... 2

     A.     Mr. Dell's Opinions Regarding the ████ Royalty Rate In The "████ ████" Lack Reliable Methodology and Should be Excluded. ................ 3

     B.     Mr. Dell's Improper Royalty Base for Smartphone Damages Should be Excluded ............................................................................................ 5

     C.     Mr. Dell's Factor 13 Apportionment is Unreliable and Should be Excluded ............................................................................................ 7

     D.     Mr. Dell's Effective Royalty Rate Analysis of the ████ License Lacks Reliable Methodology, Is Not Tied to the Facts, And Should be Excluded. .......... 9

     E.     Mr. Dell's Profit Calculations Are Unreliable and Should be Excluded. ............... 9

     F.     Mr. Dell's Unexplained Conclusions Should be Excluded .................................... 10

     G.     Mr. Dell's Opinions Regarding Any Damages Allegedly Tied Specifically to Dependent Claims Should be Excluded ............................................... 12

     H.     Mr. Dell's Narrative of Inflammatory Subject Matter Should be Excluded .......... 13

     I.     Mr. Dell's Attempts to Engage in Attorney Argument Should be Excluded ............................................................................................ 13

     J.     Mr. Dell's Discussion of ████████████████ ████████ Should be Excluded. ............................................................ 14

IV.    CONCLUSION ................................................................................................. 15

████████████████████████

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                              **Page(s)**

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015) ................................................................................. 13

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................................... 2

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
  879 F.3d 1332 (Fed. Cir. 2018) ............................................................................ 11, 12

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ................................................................................. 4

*IP Innovation L.L.C. v. Red Hat, Inc.*,
  705 F. Supp. 2d 687 (E.D. Tex. 2010) ...................................................................... 9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ..................................................................................... 8

*Limelight Networks, Inc. v. XO Commc'n, LLC*,
  3:15-cv-720-JAG, 2018 WL 678245 (E.D. Va. Feb. 2, 2018) ................................... 8

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
  10 F.4th 1358 (Fed. Cir. 2021) .................................................................................. 7

*Oyster Optics, LLC v. Cisco Systems, Inc.*,
  No. 2:20-CV-00211-JRG, Dkt. 239 (Dec. 13, 2021) ............................................... 13

*ResQNet.com Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ................................................................................... 6

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
  No. 2:18-CV-00366-JRG-RSP, 2019 WL 6896674 (E.D. Tex. Dec. 18, 2019) ...................... 13

*Virnetx, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ............................................................................. 6, 11

**Rules**

Fed. R. Civ. P. 408 .............................................................................................. 14, 15

Fed. R. Evid. 702 ...................................................................................................... 2

████████████████████████████

## I.    INTRODUCTION

Techiya's damages expert, Stephen Dell, offers various opinions in connection with his conclusion that Samsung should pay damages of $184.4 million (as a running royalty through end of 2022) or $304 million (as a lump sum covering the life of the patents)—for a license to several patents within a larger portfolio that Techiya itself acknowledged several years ago was worth less than █████. This excessive damages demand is premised upon multiple instances of unreliable methodology not tied to the facts of the case, which should be addressed by the Court at this stage in order to avoid misleading the jury with faulty expert opinions that fail the *Daubert* test.

## II.    BACKGROUND

Mr. Dell's assesses damages for two of the patents-in-suit (the '982 and '259 patents) against sales of Samsung's smartphone products, with a running royalty of $138.4 million.  (Ex. 1, Dell Rep. ¶ 21, Fig. 2.)  For a license covering the life of these two patents, this amount is increased to $171.9 million.  (*Id.* ¶ 348.)  Mr. Dell assesses damages for the remaining seven patents-in-suit against sales of Samsung's earbud products, with a running royalty of $45.9 million. (*Id.* ¶ 21, Fig. 3.)  For a license covering the life of these seven patents, this amount is increased to $132.1 million.  The total running royalty damages asserted by Mr. Dell comes to $184.4 million.  The total asserted lump sum payment for a life of patents license comes to $304 million.

With regard to damages from Samsung smartphone sales, Mr. Dell's calculations rely primarily upon applying a █████ royalty rate to a portion of the revenue for Samsung's smartphones to generate a payment of █████ per unit.  (*Id.* ¶ 341.)  After listing various other factors that he considered (*id.* ¶¶ 337-45), Mr. Dell concludes that the royalty rates assessed against Samsung smartphones are $1.25 per unit for the '982 patent and $0.50 per unit for the '259 patent (*id.* ¶ 345, Fig. 14.)  Mr. Dell's royalty opinions cannot be reproduced because the report does not explain how Mr. Dell's consideration of various factors produces these rates, nor how the same

analysis produced such different results for the two patents in question.  Earlier in the expert report, Mr. Dell conducts an apportionment under *Georgia Pacific* factor 13 (*id.* ¶¶ 298-305), which concludes that profit associated with the Bixby feature (accused under both the '982 and '259 patents) is $0.50 per unit (*id.* ¶ 305.)  The report does not explain how, if at all, this is taken into account in Mr. Dell's conclusion that Samsung would pay a royalty amounting to more than three times the profit associated with the accused feature.

With regard to damages from Samsung earbuds, Mr. Dell relies on: i) applying a ███ royalty rate to earbud revenue, and ii) calculating an effective royalty rate from Samsung's license with Jawbone, and iii) an apportionment under *Georgia Pacific* factor 13.  (*Id.* ¶¶ 354-56.)  The report notes that the apportionment is the "best and most direct" indicator of value.  (*Id.* ¶ 356.)  After listing various other factors that he considered, Mr. Dell offers conclusions on royalty rates assessed against Samsung earbuds for each of the seven patents-in-suit asserted against these products.  (*Id.* ¶ 361, Fig. 15.)  Again, his rates cannot be reproduced because the report does not explain how Mr. Dell's consideration of various factors produces these specific conclusions, which award to Techiya nearly all of the profit allegedly associated with each of the accused features.

## III.    ARGUMENT

An expert witness may provide opinion testimony only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Under Rule 702, Courts are charged with a "gatekeeping role" to ensure expert testimony is reliable and relevant.  *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993). As explained below, several of the opinions in Mr. Dell's report should be excluded under these standards.

2

███████████████████████████████████████████████████

A.    **Mr. Dell's Opinions Regarding the** ██████ **Royalty Rate In The "**██████ ████████████**" Lack Reliable Methodology and Should be Excluded.**

Several portions of Mr. Dell's analysis rely upon a ██████ royalty rate stated in a ████████ ████ document prepared for Techiya by ████████████████████████. (Ex. 1, Dell Rep. ¶¶ 215-16, 341, 354; Ex. 2, ████████████████.) In connection with damages for Samsung smartphones, Mr. Dell applies this ██████ royalty rate to a portion of the smartphone revenue, to generate a payment of ████████ per unit. (Ex. 1, Dell Rep. ¶ 341.) After listing other factors he considered, Mr. Dell concludes that the royalty rates for two patents-in-suit are $1.25 and $0.50 respectively. (Id. ¶ 345, Fig. 14.) In connection with damages for Samsung earbuds, Mr. Dell similarly applies this ██████ to the earbud revenue. (Id. ¶ 354.)

Mr. Dell's opinions regarding the ██████ royalty rate should excluded because there is no reliable methodology or analysis supporting this royalty rate. Mr. Dell's expert report admittedly does not provide any discussion of how ████ derived the ██████ royalty rate. (Ex. 3, Dell Tr. at 49:16-51:17.) Nor did Mr. Dell provide any independent analysis supporting reasonableness or reliability of this royalty rate. (Id. at 51:18-52:21.)

The ██████ royalty rate is also not tied to the facts. Mr. Dell cites no evidence that Techiya ever used the ██████ rate in licensing discussions. (Ex. 3, Dell Tr. at 83:1-10, 86:11-87:8.) This is unsurprising in view of the admission of Techiya's CEO that Techiya ████████████████████ ████████████████████████. (Ex. 4, 5/10 Firestone Tr. at 102:20-103:14; Ex. 5, Firestone Ex. 24.) Indeed, Techiya was admittedly ████████████████████████████████████ ████████████████████████████████████████████████ (Ex. 4, 5/10 Firestone Tr. at 102:5-6.) These facts are not accounted for or addressed by Mr. Dell.

Further, the hypothetical negotiation for two patents-in-suit admittedly would be in April 2017—when the patents were held by Personics. (Ex. 1, Dell Rep. ¶ 127.) Mr. Dell fails to address

██████████████████████████████

or account for Personics' lack of connection to the ████ document with the ████ royalty rates, which was not generated until a year after Personics ceased to exist.  (Ex. 3, Dell Tr. at 65:8-21.)

It goes without saying that Mr. Dell cannot simply pluck a royalty rate from thin air.  *See Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1312 (Fed. Cir. 2018) ("the $8-per-user fee appears to have been plucked from thin air and, as such, cannot be the basis for a reasonable royalty calculation").  It is even less appropriate to rely on a royalty rate plucked from thin air by ████ ████ who did not submit an expert report.  Indeed, Techiya did not ask █████████████ █████████████ royalty rate was derived and Mr. Dell did not speak with ████ about this royalty.  (Ex. 3, Dell Tr. at 81:24-82:21.)  The ████ rate is merely second-hand *ipse dixit.*

The only alleged basis provided by Mr. Dell for relying on the ████ rate is testimony of Samsung witness Hojin Chang that he generally considers "licensing practices" of patentees that are raised in licensing discussions.  (Ex. 1, Dell Rep. ¶ 341.)  But, as noted above, Mr. Dell provides no basis for tying royalty rates of ████—which were never used by Techiya in negotiations (let alone with Samsung) and which Personics never saw—to licensing practices of the patentee.  Additionally, Mr. Dell acknowledged Mr. Chang testified only that patentee licensing practices would be considered among all available facts—but not that Samsung would agree to pay such a rate or to use it as a starting point.  (Ex. 3, Dell Tr. at 95:12-97:10.)  No reliable basis is provided for opining that Samsung would agree to pay royalties based on the ████████ rate.

Further, in addition to overall lack of reliability of the ████ rate, Mr. Dell fails to apply it to this case in a reliable manner, for several further reasons.  First, Mr. Dell admitted that the ████ royalty rate could have covered a license to Techiya trade secrets and software.  (Ex. 3, Dell Tr. at 72:8-73:8.)  Yet, Mr. Dell merely applies the ████ rate to the patents asserted in this case without taking into account value of the potential trade secret or software license component.

4

███████████████████████████████

Second, even under Mr. Dell's assumptions, the ██████ royalty rate applies to Techiya's entire patent "portfolio." (*Id.* at 73:9-14.) That portfolio contains more than 200 patents. (*Id.* at 306:12-25.) Yet, Mr. Dell applies the ██████ royalty rate to the patents-in-suit without addressing or accounting for value associated with the rest of the portfolio. Notably, Mr. Dell did not analyze the value of the nine patents-in-suit relative to other patents in Techiya's portfolio. (*Id.* at 307:14-20.) He simply failed to take into account the portfolio-wide nature of the ██████ royalty rate.

Third, Mr. Dell compounds the problem by applying the ██████ royalty for each of the nine patents-in-suit. The ██████ document admittedly applies this royalty once for a license to Techiya's entire patent portfolio (as well as, potentially, its trade secrets and software). (*Id.* at 74:7-23.) Mr. Dell, not only uses this royalty for a small subset of the portfolio, but he inexplicably double, triple, and quadruple counts by re-applying the royalty for each individual patent-in-suit. No analysis or explanation is provided in Mr. Dell's report for this inflation of damages.

**B.    Mr. Dell's Improper Royalty Base for Smartphone Damages Should be Excluded.**

As noted above, Mr. Dell's damages analysis for smartphones involves applying a royalty rate of ██████ to a portion of the smartphone revenue, to generate payments in the range of ██████ ██████. (Ex. 1, Dell Rep. ¶ 341.) In particular, the royalty is applied to a $51 price difference between Galaxy S8 and S7 smartphones (because the former has the accused Bixby software feature while the latter does not). (Ex. 3, Dell Tr. at 133:15-134:2.) After noting other factors, Mr. Dell concludes that the royalty rates for two patents are $1.25 and $0.50, respectively. (Ex. 1, Dell Rep. ¶ 345, Fig. 14.) This opinion fails to use the proper royalty base for several reasons.

First, Mr. Dell's analysis fails to properly apportion the royalty base. Mr. Dell acknowledges earlier in his report that the $51 figure used as his royalty base is not the value of the accused Bixby voice activation feature—and requires multiple steps of apportionment. (Ex. 1

¶¶ 299-305.)  First, the $51 figure includes (at least) the value of unaccused improvements to the smartphone display screen and camera, which are not accused.  (*Id.* ¶¶ 299-300.)  To address this, Mr. Dell's analysis of *Georgia Pacific* factor 13 applies a 2/3 reduction to (allegedly) account for the value of unaccused features.  (*Id.* ¶ 303.)  Second, ███████ of smartphones make use of the accused Bixby application.  (*Id.* ¶ 305.)  Mr. Dell applies a ████ reduction to account for this.  (*Id.*)  Third, ████████ of smartphone users prefer unaccused touch activation over the accused voice activation.  (*Id.* ¶¶ 303-04.)  Mr. Dells applies a ████ reduction to account for this.  (*Id.*)  The result is a $0.50 apportioned value (out of the original $51) for the accused feature.  (*Id.* ¶ 305.)

Despite acknowledging earlier in his report that the $51 figure requires multiple steps of apportionment to reflect the value of the accused feature, Mr. Dell takes none of these steps in his actual damages calculation.  (Ex. 3, Dell Tr. at 134:9-135:19.)  Instead, he applies the ████ royalty rate to the full, overinclusive $51 royalty base.  (*Id.* at 133:15-134:8.)  No analysis or explanation is provided in Mr. Dell's report to defend the reliability of this omission.

In his deposition, Mr. Dell argued that apportionment is not necessary in his damages calculations because the ████ royalty rate that he applies already reflects apportionment.  (*Id.* at 141:5-142:9.)  However, the Federal Circuit has held that an expert cannot rely upon apportionment reflected within a royalty rate when there is "no assessment of the licensed technology versus the accused technology to account for any differences."  *See MLC Intell. Prop., LLC v. Micron Tech., Inc.,* 10 F.4th 1358, 1375 (Fed. Cir. 2021).  Mr. Dell's report makes no assessment of the technology subject to the ████ royalty rate in the ████ "licensing model" versus the accused smartphones.  Moreover, the ████ document containing the ████ specifically lists a ██████ of products to which this royalty was applied.  (Ex. 13, Dell Rep. ¶ 215; Ex. 2, ████████.)  But smartphones and their features are omitted from this list.  (*Id.; Ex*

3, Dell. Tr. at 76:6-14; 77:8-13.)  Thus, Mr. Dell fails to provide a reliable basis for applying the ███ royalty to a base of $51 of smartphone revenue, with no apportionment of that royalty base to exclude value that is not tied to accused features (and that is not accounted for by the ██ rate).

Second, Mr. Dell failed to use the proper starting point for his analysis.  Techiya's infringement assertions are directed to an aspect of the Bixby software application on smartphones, namely its voice activation feature.  (Ex. 1, Dell Rep. ¶¶ 277-80, 300; Ex. 6, Anderson Reb. Rep. ¶¶ 475-80.)  Bixby is a standalone software application that can either be downloaded onto Samsung smartphones or can be pre-loaded on the smartphone.  (Ex. 7, Galaxy Store.)  The Bixby application (or at most, Bixby and associated components, such as the processor and microphone) is therefore the smallest saleable patent practicing unit ("SSPPU") for the '982 and '259 patents.

By starting with a portion of smartphone revenue, Mr. Dell fails to tie his damages analysis "to the claimed invention's footprint in the marketplace." *ResQNet.com Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).  Rather, apportionment must start with the SSPPU.  *See Virnetx, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1329 (Fed. Cir. 2014).  In view of the absence of any contention that the '982 and '259 patents drive demand for smartphones, Mr. Dell's analysis fails.

### C.    Mr. Dell's Factor 13 Apportionment is Unreliable and Should be Excluded.

Under *Georgia Pacific* factor 13, Mr. Dell addresses apportionment of value associated with accused features (but, as noted above, does not actually use this apportionment in his royalty calculations).  In this analysis, Mr. Dell allocates value among groups of features listed in Samsung materials by assuming that all such features have equal value.  For example, with regard to smartphones, Mr. Dell identifies a $51 price difference between Galaxy S8 and S7 smartphones, which he assumes is due to three features listed in a Samsung document: i) improved display screen, ii) improved camera, and iii) Bixby.  (Ex.1, Dell Rep. ¶¶ 299-303.)  Mr. Dell then assumes these three features have equal value.  (*Id.* ¶ 303; Ex. 3, Dell Tr. at 122:17-24.)  For earbuds, Mr.

7

███████████████████████████████

Dell similarly assumes equal value among multiple sets of features listed in documents for several earbuds.  (Ex. 1, Dell Rep. ¶¶ 315-17, 318-19, 321-22.)

The Federal Circuit has rejected a "one-third apportionment" that "appears to have been plucked out of thin air based on vague qualitative notions of the relative importance" of features. *See LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 69 (Fed. Cir. 2012); *Limelight Networks, Inc. v. XO Commc'n, LLC,* 3:15-cv-720-JAG, 2018 WL 678245, at *7-*8 (E.D. Va. Feb. 2, 2018) (excluding expert's "even-division method").  That is what Mr. Dell does here.  For apportionment of smartphones features, Mr. Dell assumes equal value of three diverse features, with no explanation.  For apportionment of earbud features, Mr. Dell likewise assumes equal value of many different features.  For one patent, he footnotes a vague, qualitative assertion of relative importance.  (Ex. 1, Dell Rep. ¶ 324, n. 482.)  But that is insufficient under Federal Circuit law.

The deficiency in Mr. Dell's unsupported assumptions is reinforced by the existence of record evidence regarding differing significance of the features at issue, which could have been used for apportionment.  For example, the record includes a survey of percentages of smartphone users who rank particular features in their top 5 (rankings for the features at issue here are: ████
████████████████████████████).  (Ex. 3, Dell Tr. at 127:6-25, 130:16-25; Ex. 8, Dell Ex. 10 at 9.)  Further, the document relied upon by Mr. Dell for his list of eight features associated with the Galaxy Buds products breaks down these features into categories of "key features," "unique selling points," and "additional features."  (Ex. 3, Dell Tr. at 195:13-198:11; Ex. 9, Dell Ex. 15.)  The accused "adaptive dual microphone" is designated as ███████████
███████████████████████████████.  (Ex. 3, Dell Tr. at 197:2-7.) But instead of accounting for such evidence, Mr. Dell instead made a blanket assumption of equal value.  (*Id.* at 198:12-24.)  This is an unreliable opinion that is not tied to the facts of the case.

██████████████████████████████████

**D.    Mr. Dell's Effective Royalty Rate Analysis of the ██████ License Lacks Reliable Methodology, Is Not Tied to the Facts, And Should be Excluded.**

One of the licenses at issue in the damages analysis is an agreement between Samsung and ██████. In that agreement, Samsung made a payment of ██████████ in return for a license to a portfolio of ██████ patents.  Both parties' experts agree that seven of the licensed ██████ patents are comparable to the nine Techiya patents-in-suit from a technical perspective.  (Ex. 3, Dell Tr. at 167:1-7; 169:11-20.)  However, Mr. Dell seek to inflate the payment derived from the ████ e license with an unreliable analysis of the ██████ license's effective royalty rate.

Mr. Dell acknowledges in his report that the infringement accusations resolved by the ██████ license included accusations against at least "certain smartphones" of Samsung.  (Ex. 1, Dell Rep. ¶ 194.)  He further admitted that ██████ infringement contentions accused "all versions of variants of Samsung smartphones" under the asserted ██████ patents.  (Ex. 3, Dell Tr. at 152:8-153:17.)  Yet, when Mr. Dell calculated an effective royalty rate from the ██████ license he did not include smartphone revenue in the calculations (but instead used only the far smaller earbud revenue).  (Ex. 1, Dell Rep. ¶ 195; Ex. 3, Dell Tr. at 156:12-17.)  Mr. Dell's report contains no analysis or explanation for omitting the smartphones accused by ██████ from his effective royalty rate calculation—and thus vastly inflating the royalty rate.  (Ex. 1, Dell Rep. ¶ 195). Mr. Dell should not be permitted to mislead the jury with an effective royalty rate calculation that lacks reliable methodology and is untied from the facts.  *See IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689 (E.D. Tex. 2010) ("reliable reasonable royalty calculation depends on trustworthy evidence of both the royalty base and the royalty rate").

**E.    Mr. Dell's Profit Calculations Are Unreliable and Should be Excluded.**

As part of his apportionment analysis, Mr. Dell calculates profits associated with the accused products.  For the accused Galaxy Buds products, Mr. Dell calculates "operating profit"

by starting with the selling price, subtracting cost of goods incurred by SEC (Samsung's Korean entity) and subtracting operating expenses incurred by SEA (Samsung's US entity).  (Ex. 1, Dell Rep. ¶ 254, Fig. 7; Ex. 3, Dell Tr. at 199:8-200-19.)  But Mr. Dell does not subtract operating expenses incurred by SEC for these same products.  (*Id.*; Ex. 3, Dell Tr. at 205:2-206:12; 209:21-210:5.)  The expert report provides no analysis or explanation regarding the failure to take into account SEC operating expenses, nor any indication of how this issue is addressed.

Further, with regard to smartphones, Mr. Dell calculates "operating profit" for the Galaxy S8 by applying a 22.4% "company-wide" profit margin.  (Ex. 1, Dell Rep. ¶ 302.)  This profit margin figure covers the wide range of businesses within the entirety of Samsung.  But the expert report provides no explanation for why Mr. Dell used the company-wide profit margin as opposed to the profit margin tied to the specific accused Galaxy S8 smartphones.  Notably, the attachments to Mr. Dell's expert report calculate a ▮▮▮ actual profit margin for the Galaxy S8 model with meaningful sales (model ▮▮▮▮▮).  (Ex. 10, Dell Rep. Attachment 9A at 6, Ex. 11, Dell Rep., Attachment 9K at 6; Ex. 3, Dell Tr. at 220:3-15.)  Mr. Dell asserted in his deposition that this figure reflected SEA profit, but he admittedly could have calculated the actual profit margin for Galaxy S8, taking into account both SEC and SEA data, yet did not do so.  (Ex. 3, Dell Tr. at 221:8-222:2.)  The expert report provides no basis for instead using company-wide data.  Mr. Dell should not be permitted to mislead the jury with inflated profit figures that lack a reliable basis.

**F.     Mr. Dell's Unexplained Conclusions Should be Excluded.**

After discussing the *Georgia Pacific* factors, Mr. Dell discusses hypothetical negotiations between the parties.  With regard to damages for Samsung earbud products, Mr. Dell references the apportioned profits from his analysis of *Georgia Pacific* factor 13, a royalty rate generated from the ▮▮▮ license (discussed in Section III.D. above), a payment using the ▮▮▮▮▮ royalty rate (discussed in Section III.A. above) applied to earbud revenue, as well as a list of factors

that the parties would consider.  (Ex. 1, Dell Rep. ¶¶ 350-61.)  After listing these various factors,

Mr. Dell then announces a specific royalty rate for each of the seven patents-in-suit asserted against

earbuds, ranging from $3.00 to $0.50 per-unit.  (*Id.* ¶ 361, Figure 15.)  No explanation is provided

for how the various factors and metrics referenced by Mr. Dell lead to these specific conclusions.

The Federal Circuit recently considered a similar scenario, where "[a]fter a discussion of

each of the *Georgia–Pacific* factors, including the benefits of the patented technology, sales and

profitability, and the competitive relationship of the parties, [patentee's] expert concluded with

little explanation that [the parties] would have agreed to a [particular] reasonable royalty rate."

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC,* 879 F.3d 1332, 1349 (Fed.

Cir. 2018).  The Federal Circuit excluded this because "even assuming [the expert] properly

considered this record evidence, she failed to explain how the evidence factored into the proposed

royalty rate."  *Id.* at 1351.  Mr. Dell's unexplained conclusions should likewise be excluded.

A further problem is that Mr. Dell fails to provide methodology for his apparent splitting

of profits among Techiya and Samsung.  Mr. Dell notes that his apportionment of the profits

allegedly associated with the accused feature is the "best and most direct" measure of benefits and

economic value of the patents-in-suit.  (Ex. 1, Dell Rep. ¶ 356.)  Indeed, Mr. Dell's royalty rates

are close to the amounts of alleged apportioned profits associated with the accused features.  For

example, Mr. Dell opines the profit for the feature accused under the '400 patent is $3.40 per unit.

(*Id.* ¶ 324.) He then concludes the royalty is $3.00 per unit.  (*Id.* ¶ 361, Fig. 15.) But no explanation

or methodology is given for determining that nearly all of the profits should be awarded to Techiya.

The Federal Circuit has rejected profit splits that are not sufficiently tied to the facts of the

case, such as use a 50/50 profit split with minor variations.  *See Virnetx,* 767 F.3d at 1332.  Mr.

Dell apparently seeks to sidestep this issue by omitting any analysis of how to divide profits and

instead making a "black box" award of nearly all of the profits to Techiya.  This unstated "90% rule" is no better than the 25% rule and 50/50 rule that were soundly rejected by the Federal Circuit.

With regard to damages for Samsung smartphones, Mr. Dell likewise purports to consider various factors, including application of the ▮▮▮▮▮ royalty rate (discussed in Section III.A. above).  (Ex. 1, Dell Rep. ¶¶ 337-45.)  Mr. Dell then announces per-unit royalty rates of $1.25 for the '982 patent and $0.50 for the '259 patent.  (*Id.* ¶ 345, Fig. 14.)  No explanation is provided for how the various factors and metrics referenced by Mr. Dell lead to these specific conclusions, nor for how consideration of the same factors led to such divergent results for for each of the '982 and '259 patents.  As before, these unexplained conclusions should be excluded.  *See Exmark,* 879 F.3d at 1349 ("even assuming [the expert] properly considered this record evidence, she failed to explain how the evidence factored into the proposed royalty rate").

### G. Mr. Dell's Opinions Regarding Any Damages Allegedly Tied Specifically to Dependent Claims Should be Excluded.

Mr. Dell's report contains a damages figure for each of the asserted patents, with no breakdown among the multiple asserted claims within each patent.  (Ex. 1, Dell Rep. ¶ 21, Figs. 2-3).  Nor is there any analysis in the report regarding the value attributable to the dependent claims or their subject matter.  Further, Mr. Dell testified that the full amount of his asserted damages for each patent would be assessed for infringement of individual claims, such as claim 1 of the '400 patent or claim 2 of the '982 patent.  (Ex. 3, Dell Tr. at 230:13-231:22, 237:24-238:6.)  It is therefore clear that Mr. Dell has not provided any opinions regarding incremental value of dependent claims beyond the value of the base claims from which they depend.

The value of the dependent claims is relevant, for example, if the base claims are invalid in view of the prior art.  In such a scenario (which already exists for several patents-in-suit in view of final written decisions by the PTAB), damages are limited to incremental contribution of the

subject matter of the dependent claims over the subject matter found to be in the public domain. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim").  Because Mr. Dell has not analyzed the incremental value tied to the dependent claims he should not be permitted to opine on this issue.

### H.    Mr. Dell's Narrative of Inflammatory Subject Matter Should be Excluded.

The Court has previously excluded expert testimony amounting to narrative account of information, which offers no "expertise to help the jury understand facts or issues beyond a lay person's understanding."  *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-JRG-RSP, 2019 WL 6896674, at *2 (E.D. Tex. Dec. 18, 2019).  While discussing *Georgia Pacific* factor 4 (the policies of the licensor regarding exclusivity), Mr. Dell interjects that it is "interesting" that ████████████████████████████████████████████████████████████ ████████████████████████. (Ex. 1, Dell Rep. ¶ 210.)  No expertise is applied to this narrative, which Mr. Dell merely purports to label as "interesting."  Nor does Mr. Dell's report contain an explanation of any supposed relevance of this "interesting" observation to *Georgia Pacific* factor 4 or any part of the damages analysis.  It is not helpful to the jury for Mr. Dell to serve as a mouthpiece for narrating inflammatory subject matter that is not tied to his expert analysis.

### I.    Mr. Dell's Attempts to Engage in Attorney Argument Should be Excluded.

This Court has previously excluded testimony of Mr. Dell that seeks to convey "attorney argument" on discovery issues.  *Oyster Optics, LLC v. Cisco Systems, Inc.*, No. 2:20-CV-00211-JRG, Dkt. 239 (Dec. 13, 2021).  The same should be done for Mr. Dell's attempts to do so here.

Regarding the '400 patent, Mr. Dell acknowledges that Samsung's latest Buds2 and Buds2 Pro products are not accused of infringing and are not included in damages calculations.  (Ex. 1, Dell Rep. ¶ 1, n. 1.)  Yet he also asserts an absence of non-infringing alternatives.  (*Id.* ¶ 350.)  Mr.

13

██████████████████████████████████████████████

Dell attempted to defend this inconsistency by asserting these products are not accused due to supposed discovery problems.  (Ex. 3, Dell Tr. at 246:16-248:24.)  It is Techiya's burden to show infringement and it admittedly did not do so for these products.  There is no basis for Mr. Dell to confuse the jury by serving as a mouthpiece for attorney argument on supposed discovery issues.

Regarding calculation of profits for Samsung's Galaxy S8 smartphones, Mr. Dell uses a companywide profit margin while disregarding actual profits for the specific Galaxy S8 product.  *See supra* at 9-10.  Mr. Dell sought to excuse this deficiency by (incorrectly) speculating that Samsung did not produce data regarding costs and profits for Galaxy S8 during fact discovery.  (Ex. 3, Dell Tr. at 221:8-16)  Once again, this attorney argument has no place in expert opinion.

Further, Samsung's expert analyzes an internal patent analysis produced by Techiya, which contains ████████████████████████████████████████.  (Ex. 13, Ugone Rep. ¶¶ 202-05.)  When asked for confirmation that this patent analysis is not discussed in his report, Mr. Dell argued that the document may be subject to work product claims.  (Ex. 3, Dell Tr. at 314:8-17.)  The fact is that this document was produced by Techiya and was never clawed back under any work product claims (and any such claims would have been made by Techiya, which is the party who retained Mr. Dell).  Mr. Dell should not be permitted to confuse the jury regarding significance of the patent analysis by speculating about work product claims that were never made.

**J.     Mr. Dell's Discussion of** ████████████████████████ ████████ **Should be Excluded.**



Mr. Dell discusses ██████████████████████████████████ ████████████████████████████████████████████████.  (Ex. 1, Dell Rep. ¶¶ 58, 197-98.)  This subject matter should be excluded under ███████████ ███████████.  The parties' ██████████████████████████████████████ ████████████████████████████████████████████████████████  It

designates ███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████ (*Id.*)  The ███████████████████████████

███████████████████████████████████████████████████

█████████████ (*Id.* at 2, ¶ 2.b.)  Additionally, the ███████████████

███████████████████████████████████████████████████

█████████████ (*Id.*)  It is therefore clear that ███████████████████

███████████████████████████████████████████

Further, to the extent ████████████████████████ are not excluded, Mr.

Dell's assertion of ██████████████████████████████████ is subject to a

deficiency similar to the one discussed earlier in connection with the ███████ license (*see* Section

III.D.).  As with the ████████ license, Mr. Dell calculates an effective royalty rate from Samsung's

██████████████ using only earbud sales exposure.  (Ex. 1, Dell Rep. ¶ 198; Ex. 3, Dell Tr. at

325:13-25.)  Mr. Dell admitted that he is not aware of any basis to speculate that ████████████

█████████████████████████ smartphones.  (Ex. 3, Dell Tr. at 326:1-11.)  Indeed,

smartphone royalties account for about 3/4 of the total damages asserted by Mr. Dell in this case.

(Ex. 1, Dell Rep. ¶ 21, Figs. 2-3.)  Mr. Dell's report contains no analysis or explanation for omitting

the accused Samsung smartphones from his effective royalty rate calculation—and thus vastly

inflating the effective royalty rate.  Mr. Dell should not be permitted to mislead the jury with an

effective royalty rate that lacks reliable methodology and is untied from the facts of the case.

## IV.    CONCLUSION

For the foregoing reasons, the Court should exercise is gatekeeper function to exclude the

challenged opinions of Mr. Dell because they are unreliable and not tied to the facts of the case.

Date: June 26, 2023

Respectfully Submitted,

*/s/ Melissa R. Smith*

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email:  melissa@gillamsmithlaw.com

Andrew Thompson Gorham
State Bar No. 24012715
James Travis Underwood
State Bar No. 24102587
GILLAM & SMITH, L.L.P.
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: tom@gillamsmithlaw.com
Email: travis@gilliamsmithlaw.com

Gregory S. Arovas (*pro hac vice*)
Todd M. Friedman (*pro hac vice*)
Alex R. Henriques (*pro hac vice*)
Peter J. Evangelatos (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: greg.arovas@kirkland.com
Email: todd.friedman@kirkland.com
Email: alex.henriques@kirkland.com
Email: peter.evangelatos@kirkland.com

Edward C. Donovan (*pro hac vice*)
Sean M. McEldowney (*pro hac vice*)
John Rhine (*pro hac vice*)
Matthew McIntee (*pro hac vice*)
Sophia Lee (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

Facsimile: (202) 389-5200
Email: edonovan@kirkland.com
Email: smceldowney@kirkland.com
Email: john.rhine@kirkland.com
Email: matt.mcintee@kirkland.com
Email: sophia.lee@kirkland.com

David Rokach (*pro hac vice*)
Jay Emerick (*pro hac vice*)
Nikhil Krishnan (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle Drive
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: david.rokach@kirkland.com
Email: jay.emerick@kirkland.com
Email: nikhil.krishnan@kirkland.com


Luke L. Dauchot (*pro hac vice)*
Ali-Reza Boloori (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900
Email: ldauchot@kirkland.com
Email: ali-reza.boloori@kirkland.com

Paul Sampson (*pro hac vice*)
Michael Lehr (*pro hac vice*)
KIRKLAND & ELLIS LLP
60 East South Temple, Suite 700
Salt Lake City, UT 84111
Telephone: (801) 877-8100
Facsimile: (801) 877-8101
Email: paul.sampson@kirkland.com
Email: mike.lehr@kirkland.com

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 26, 2023. Any other counsel of record will be served by facsimile transmission or by first class mail.

*/s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

On June 22, 2023, counsel for Defendants has complied with the meet and confer requirement in Local Rule CV-7(h) and made a good-faith effort to resolve the matter presented herein. Plaintiff opposes the instant motion.

*/s/ Melissa R. Smith*
Melissa R. Smith

