# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| STATON TECHIYA, LLC and SYNERGY IP CORPORATION, | § § § | |
| | § | Case Nos. 2:21-CV-00413-JRG-RSP; |
| Plaintiffs-Counterclaim Defendants, | § § | 2:22-cv-00053-JRG-RSP |
| v. | § § | ████████████████ |
| SAMSUNG ELECTRONICS CO. LTD. and SAMSUNG ELECTRONICS AMERICA, INC. | § § § § § | |
| Defendants-Counterclaim Plaintiffs. | § | |

## COUNTERCLAIM-DEFENDANT STATON TECHIYA, LLC'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF SAMSUNG'S DAMAGES EXPERT DR. KEITH R. UGONE[1]

---

[1] Plaintiff Techiya also is filing a separate *Daubert* motion challenging Dr. Ugone's rebuttal opinions with respect to Techiya's patent infringement claims, which are set forth in a separate report prepared by Dr. Ugone dated March 17, 2023.

██████████████

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.  Ugone's Misappropriation Damages Methodology Is Flawed. ................................ 4

    A.  Ugone Did Not Use the ███████████████████.......................... 5

    B.  Ugone Failed to ████████████████████.................... 7

    C.  Ugone's Underlying Assumptions Are Unsupported by the Facts of this Case. ............... 8

    D.  Ugone Fails to ██████████████. . ................................ 11

II.  Ugone's ████████████ Is Similarly Speculative and Unsupported by the Record. ................................................................................................................ 13

III. Ugone's █████████ Is Rank Hearsay ................................................ 14

IV. Ugone's ██████████ Opinion Is Improper. ...................................... 15

CONCLUSION................................................................................................................ 15

██████████████

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcatel USA, Inc. v. Cisco Sys.*,
239 F. Supp. 2d 660 (E.D. Tex. 2002) ................................................................7, 8, 10, 11, 12

*Blue Spike, LLC v. Huawei Techs. Co.*,
2016 WL 9286102 (E.D. Tex. Oct. 14, 2016) .........................................................................10

*Bmc Software, Inc. v. Servicenow, Inc.*,
2016 WL 367251 (E.D. Tex. Jan. 29, 2016)..............................................................................4

*Cassidian Commc'ns Inc. v. Microdata GIS, Inc.*,
2013 WL 11322510 (E.D. Tex. Dec. 3, 2013)........................................................................7, 8

*Contour IP Holding, LLC v. GoPro, Inc.*,
2021 WL 75666 (N.D. Cal. Jan. 8, 2021) ................................................................................11

*Cross Creek Multifamily, LLC v. ICI Constr., Inc.*,
2020 WL 8254812 (S.D. Miss. Dec. 1, 2020) .........................................................................15

*Dart v. Kitchens Bros. Mfg. Co.*,
253 F. App'x 395 (5th Cir. 2007) ..........................................................................................6, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993).................................................................................................................3

*Dyll v. Adams*,
167 F.3d 945 (5th Cir. 1999) ..................................................................................................10

*Fletcher v. Allstate Tex. Lloyd's*,
2022 WL 2980949 (E.D. Tex. July 25, 2022) .........................................................................14

*Genband US LLC v. Metaswitch Networks Corp.*,
2016 WL 122967 (E.D. Tex. Jan. 9, 2016)..............................................................................11

*Ga.-Pac. Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970).......................................................................................5, 6

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)..................................................................................................................3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)...................................................................................................11

███████████

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ....................................................................................7

*Lyondell Chem. Co. v. Albemarle Corp.*,
  2007 WL 5527509 (E.D. Tex. Mar. 9, 2007) ..........................................................15

*Moore v. Ashland Chem. Inc.*,
  151 F.3d 269 (5th Cir. 1998) .......................................................................................4

*Owen v. Kerr-McGee Corp.*,
  698 F.2d 236 (5th Cir. 1983) .....................................................................................14

*Robroy Indus.-Tex., LLC v. Thomas Betts Corp.*,
  2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ..........................................................15

*Roe v. Patterson*,
  2022 WL 987814 (E.D. Tex. Mar. 31, 2022) ............................................................14

*Stragent, LLC v. Intel Corp.*,
  2014 WL 1389304 (E.D. Tex. Mar. 6, 2014) ............................................................11

*Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*,
  2020 WL 7330715 (D. Del. Jan. 13, 2020) ...............................................................11

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
  895 F.3d 1304 (Fed. Cir. 2018) .................................................................................12

*United States v. St. Luke's Episcopal Hosp.*,
  2008 WL 11407300 (S.D. Tex. May 20, 2008) .........................................................14

*Whitserve, LLC v. Comp. Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) .......................................................................................7

**Rules**

Fed. R. Evid. 104 ................................................................................................................4

Fed. R. Evid. 702 ................................................................................................................4

## **PRELIMINARY STATEMENT**

Samsung has a problem. Samsung faces significant exposure for infringing Techiya's patents. Opting for a "best defense is any offense" approach, Samsung filed counterclaims against Techiya, Synergy, Dr. Seung-Ho Ahn, and Sungil Cho ("Counterclaim Defendants"), including breach of fiduciary duty, knowing participation in, or aiding and abetting, breach of fiduciary duty, misappropriation of trade secrets, and civil conspiracy (the "Non-Patent Counterclaims").

Samsung's convoluted assertion is that "but for" Ahn's and Cho's prior employment with Samsung, the Counterclaim Defendants would not have the "benefit" of formulating the optimal strategy for remedying Samsung's patent violations. Put differently, Samsung's theory is that, if not for Ahn's and Cho's "inside information," Samsung could have gotten away with settling Techiya's patent claims for a much smaller sum and avoided its current litigation exposure.

Enter Dr. Keith R. Ugone, Samsung's go-to economics expert, who Samsung has engaged in no less than 16 cases. Samsung retained Ugone to opine on the purported damages resulting from the Non-Patent Counterclaims (what Ugone refers to as the "wrongful conduct"). Critically, however, in his 35-page February 6, 2023 report, (Exhibit A), Ugone offers no damages figure.

Rather, Ugone's entire damages opinion for the Non-Patent Counterclaims is ███████████ ████████████████. Ugone opines that ████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████. From this, Ugone concludes that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████.

In a transparent effort to arrive at the contrived outcome Samsung seeks, Ugone opines that ███████████████████████████████████████████████████████████████ ████████████████████████████████████. And according to Ugone, ████

██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████.

Alternatively, Ugone opines that ████████████████████████████████████████ ████████████████████████████████████. Ugone states that ████

████████████████████████████████████████████████

████████████████████████████████████.

Ugone's opinions, however, fall far short of the requirements of *Daubert* and Rule 702.

*First*, Ugone's trade secret misappropriation "approaches" are fundamentally flawed. Ugone admitted that █████████████████████████████████████████████ █████████████████████. And even if Ugone's factors were valid—they are not—he fails ████████████████████████████████████████. Critically, Ugone also fails ███████████████████████████████████████████████.

Moreover, Ugone's hypothetical negotiation opinions are unreliable because they are predicated on unsupported assumptions. Ugone first ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ But Ugone offers zero support for this fictitious assumption, and indeed, the record directly contradicts this narrative. Ugone also assumes that ██████ ████████████████████████████████████████████████ ████████████████████ But Ugone conveniently ignores ████████████████████████ ████████████████████████████████████████████████ Further, Ugone fails to █████████████████████████████ ████████████████████████████████████████████████

████████████

████████████████████████ Any one of these defects standing alone renders Ugone's trade secret misappropriations damages opinions unreliable.

*Second*, Ugone fails to provide any basis for his unjust enrichment damages theory. Instead, Ugone's conclusory opinion is simply that ██████████████████████████ ██████████████████████████ But this is simply the legal contention advanced by Samsung, and Ugone's unjust enrichment theory is precisely the type of ipse dixit expert opinion against which *Daubert* and Rule 702 are designed to guard.

*Third*, Ugone claims that Samsung suffered "actual losses" ████████████████ ████████████████ But Ugone admitted that he did nothing to verify the veracity of these "losses," and such expert opinions are nothing more than rank hearsay that should be excluded.

*Finally*, Ugone suggests that ████████████████████████ But this ████ ████████████████████████████ —another improper subject for expert testimony.

At bottom, Samsung wishes to use Ugone as a mouthpiece to advance inadmissible "expert" opinions aimed at bolstering its thread-bare legal contentions in order to have a jury reach artificial conclusions, all of which are prohibited under *Daubert* and its progeny, as well as Rule 702. Ugone's opinions thus are unreliable, unhelpful to the trier of fact, and should be excluded.

## **LEGAL STANDARD**

This Court must act as a "gatekeeper" to ensure expert testimony meets the requirements of the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7 (1993). District courts are "accorded broad discretion in making Rule 702 determinations." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is

admissible. Fed. R. Evid. 104(a); *Moore v. Ashland Chem. Inc*., 151 F.3d 269, 276 (5th Cir. 1998).

The District Court's "ultimate inquiry [is] whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial." *Bmc Software, Inc. v. Servicenow, Inc.,* 2016 WL 367251, at *2 (E.D. Tex. Jan. 29, 2016). Proffered testimony is relevant only if the "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Reliability considerations include whether: (1) "the testimony is based on sufficient facts or data"; (2) "the testimony is the product of reliable principles and methods"; and (3) "the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702(b)–(d); *see also Daubert*, 509 U.S. at 593–94 (stating relevant factors are: (1) whether technique can be and has been tested; (2) whether technique has been subjected to peer review and publication; (3) known or potential rate of error and (4) general acceptance within the scientific community).

## **ARGUMENT**

**I.    UGONE'S** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **METHODOLOGY IS FLAWED.**

Ugone ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮. Ex. A ¶ 66 (emphases added). The reason for Ugone's admission is simple. More than a year after filing its counterclaims, Samsung still has yet to identify with any specificity the purported "trade secrets" that form the basis for its misappropriation claim. Ugone's inability to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. B 107:17–108:17 ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Nevertheless, Ugone claims to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████

██████████████████████████████. Ex. A ¶¶ 66–68. Ugone first offers a

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████. Ex. A ¶¶ 68–70. Alternatively, Ugone posits that ██████████████

████████████████████████████████████████████████████

█████████████████████████████████ Ex. A ¶¶ 68, 72–73.

Neither of Ugone's two "approaches" satisfy the *Daubert* standard. First, Ugone admitted that ████████████████████████████████████████████████████

███████████████.[2] Second, Ugone █████████████████████████████

Third, Ugone's ████████████████████████████████████████████

████████████████████. And fourth, Ugone ████████████████████████

### A.    Ugone Did Not Use the █████████████████████████

Ugone's sleight of hand begins with his statement that ██████████████████

██████████████████████████████████████████. Ex. A n.86.

Yet, at the same time that he references *Georgia-Pacific*, Ugone also admits that █████████████

████████████████████████████████████████████████████ Ex. A

n.86.[3] Ugone, however, fails to explain how his analysis comports with *Georgia-Pacific*.

The reason for Ugone's failure is simple: █████████████████████████

████████████████████████████████████████████████████

█████████  Instead, Ugone █████████████████████████████████████

---

[2] A hypothetical negotiation is a method of calculating a reasonable royalty in patent infringement cases, as explicated in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) and its progeny, that also can be used in trade secret misappropriation cases.
[3] Ugone admitted at his deposition that █████████████████████████████████████
█████████████████████ Ex. B 146:7–149:14.



███████████████████████ Ex. A ¶ 66 (emphases added).

While Ugone claims that ███████████████████████████

████████████████ Ex. B 154:25–155:17, that assertion is false. For example, Ugone

claims that ████████████████████████████████████████

████████████████████████ Ex. B 153:1–6. But the *Georgia-Pacific*

analysis considers the "extent to which the infringer ***has made use***" of the trade secret, i.e. actual

use, not ███████████████████ *Compare* Ex. A ¶ 66a, *with* 318 F. Supp. at 1120

(Factor 11). And when asked about ██████████████████████████████

█████████████████████████████████████,[4] █████████████

███████████████████ Ex. B 153:1–154:9.

Moreover, even if Ugone's ████████████████████████

██████████████████████████████████████████████.

Instead, Ugone ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ l. Ex. A ¶¶ 66, 69. Such an analysis fails to meet the

*Daubert* threshold. *See, e.g.*, *Dart v. Kitchens Bros. Mfg. Co.*, 253 F. App'x 395, 398 (5th Cir.

---

[4] "The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter." *Georgia-Pacific*, 318 F. Supp. at 1120.

2007) (affirming exclusion of expert's opinion in part because the expert "could not establish that his method had ever been used before and did not compare his method with an established one"); *Whitserve, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 31–32 (Fed. Cir. 2012) (vacating jury's damages award where expert failed to explain "both why and generally to what extent the particular factor impacts the royalty calculation," thus "encourag[ing] the jury to reach a purely speculative judgment").

**B.    Ugone Failed to** ███████████████████████████████████████████.

Not only did Ugone █████████████████████████████████████, but even assuming for the sake of argument that Ugone's analysis comports with *Georgia-Pacific*, it still is fundamentally flawed and should be excluded under *Daubert* because ████████████████ ███████████████████████████

"The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). It thus is well established that a reasonable royalty analysis must use a hypothetical negotiation date tied to the first alleged misappropriation. *See Alcatel USA, Inc. v. Cisco Sys.*, 239 F. Supp. 2d 660, 670 (E.D. Tex. 2002) (holding that a hypothetical negotiation date "a year and a half after the first trade secret misappropriation" "violates the principle requiring" trade secrets to be "measured at the time of the alleged misappropriation").

This Court explained the importance of a proper hypothetical negotiation date in *Cassidian Communications Inc. v. Microdata GIS, Inc.*, No. 2:12-cv-00162-JRG, 2013 WL 11322510 (E.D. Tex. Dec. 3, 2013) (Gilstrap, J.). In *Cassidian*, defendant's damages expert "calculate[d] [a] reasonable royalty based on an incorrect hypothetical negotiation date in November 2010—almost two years *after* the date infringement began in December 2008." *Id.* at *2. This Court held that the expert's improper hypothetical negotiation date rendered his methodology "fatally flawed," and

excluded his opinion under *Daubert*. *Id.* (citing *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012) ("[T]he correct determination of [the hypothetical negotiation] date is essential for properly assessing damages. In general, the date of the hypothetical negotiation is the date that the infringement began.") (citation omitted)). This Court recognized that "the flaw cannot be cured by '[v]igorious cross-examination, presentation of contrary evidence, [or] careful instruction on the burden of proof.'" *Id.* (alterations in original) (citation omitted).

Here, ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. B 162:10–23. Ugone's hypothetical

negotiation methodology thus is "fundamentally flawed" and should be excluded in its entirety. *Cassidian*, 2013 WL 11322510, at *2; *Alcatel USA, Inc.*, 239 F. Supp. 2d at 670.

### C.    Ugone's Underlying Assumptions Are Unsupported by the Facts of this Case.

Ugone's misappropriation damages "approaches" also are unreliable and should be excluded under *Daubert* because they are premised on baseless assumptions.

First, Ugone states that ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. A ¶ 69. From this flawed presumption, Ugone then concludes

that ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.*

But Ugone's report fails to provide any support for this settlement assumption. Indeed,

████████████████████████████████████████████████████████████

███████████████████████████████████████████. Nor does the record support Ugone's settlement assumption. While █████████████████████████████ ███████████████████████ Ex. C, ████████████████████████████████ ████████████████████████████████, Ex. D 312:2–19, 330:4– 9. And ████████████████████████████████████████████████ ██████████████████████████, Harman, Ex. E—███████████████████.

Further, ████████████████████████████████████████

For example, █████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ Ex. F 227:1–228:14.

███████████████████████████████████ Ex. F 228:15–23; 231:6–11, testifying only that ██████████████████████████████████████████

███████████████████ Ex. F 200:24–204:1. And █████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████ Ex. F 228:24–229:3, 231:22–232:2. In short, Ugone's premise—██████████████████████████████████████████████

████████████████████████████ Ex. A ¶ 69—has no basis in reality.

Second, Ugone's alternative approach is even more far-fetched. Ugone assumes that ██ ███████████████████████████████████████████████████████████ █████████ Ex. A ¶ 72. But Ugone offers no foundation—no document, no testimony—for this conclusion; there is none. Indeed, even a cursory review of ███████████████████████ ███████████████████████████████████████████████. ████████████████ █████████████████████████████████████████████████████

███████

████████████████████████████ Ex. G at -345; Ex. H, █████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████ Ex. I at -634–35, -637; Ex. J at -153, -156.

Unsurprisingly, Ugone ignores these differences, which may have resulted in conclusions inconsistent with his desired outcome. But *Daubert* demands much more. *See Dyll v. Adams*, 167 F.3d 945, 947 (5th Cir. 1999) (damages need not be established with mathematical precision, but "the evidence must provide a basis for reasonable inferences"). This is particularly true here, where ██████████████████████████ for which there is a propensity for rampant speculation. *See Blue Spike, LLC v. Huawei Techs. Co.*, 2016 WL 9286102, at *2 (E.D. Tex. Oct. 14, 2016) ("The court however must 'prevent the hypothetical from lapsing into pure speculation.'" (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010))).

*Alcatel USA, Inc. v. Cisco Systems* best demonstrates the problems with Ugone's opinions. In that case, Alcatel claimed—just as Samsung does here—that Monterey hired former Alcatel employees that "possessed knowledge of highly confidential, technical and marketing information relating to Alcatel's products," which allegedly constituted trade secrets. 239 F. Supp. 2d at 663. Alcatel further asserted that its former employees misappropriated these trade secrets in order to bring its Wavelength Router to market more quickly. *Id.* at 664. According to Alcatel, this allowed Monterey to obtain AT&T's business and increase the acquisition price that Cisco paid. *Id.*

Alcatel's expert, Steven Wiggins, opined that the full price Cisco paid to acquire Monterey approximated a reasonable royalty for the alleged trade secret misappropriation. *Id.* at 668. Wiggins's opinion assumed that, but for Monterey's misappropriation of Alcatel's trade secrets, Monterey would not have been able to bring its Wavelength Router to market in time to obtain

10

AT&T's business and thus would not have commanded the acquisition price it obtained. *Id.*

The Court rejected Wiggins's damages analysis. The Court held that "these assumptions and opinions, all of which serve as the foundation for Alcatel's damage theory, are simply too speculative. A break or non-occurrence in any of the above chain of events would eviscerate the foundation of Alcatel's damages, and consequently, Alcatel's damage theory is rendered exceedingly uncertain." *Id.* The Court found that the "uncertainty" was "highlighted" by the fact that the record contained evidence that, even absent the alleged misappropriation, Monterey still may have won AT&T's business or been acquired by Cisco. *Id.* at 668–69.

The Court's holding in *Alcatel* applies with equal force here. Similar to Wiggins's use of the full acquisition price, Ugone █████████████████████████████████████ ███████████████ Similar to Wiggins's flawed assumptions that Monterey won AT&T's business and was acquired by Cisco only because of the alleged trade secret misappropriation, Ugone's opinions rely on the assumption that ████████████████████████████████ ██████████████ Ugone's opinions thus are based on the exact type of "tenuous inferences and unsupported assumptions" that the *Alcatel* Court rejected as "simply too speculative." *Id.* at 668, 671.[5]

   **D.    Ugone Fails to** ████████████████████████████████████

Ugone's opinions also should be excluded for an independent reason: ████████████ ██████████████.[6] Damages in trade secret misappropriation cases must be apportioned to value

---

[5] *See also LaserDynamics, Inc.*, 694 F.3d at 69 (finding assumption supporting expert's opinion "appear[ed] to have been plucked out of thin air"); *Genband US LLC v. Metaswitch Networks Corp.*, 2016 WL 122967, at *5 (E.D. Tex. Jan. 9, 2016) (granting *Daubert* where expert's methodology was "highly speculative and not supported by sufficient 'facts or data'"); *Stragent, LLC v. Intel Corp.*, 2014 WL 1389304, at *4 (E.D. Tex. Mar. 6, 2014) (excluding expert opinion where "methodology relies on arbitrary assumptions that have no basis in the facts of this case").
[6] Notably, Ugone has made this same error in at least two recent patent infringement cases, resulting in those courts excluding his opinions. *See Sunoco Partners Mktg. & Terminals L.P. v.*



each purported trade secret at issue. *See, e.g.*, *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1317 (Fed. Cir. 2018) (vacating damages award because expert "did not explain which of the trade secrets contributed to what amount of profit to be disgorged; he assigned all profits to the misappropriation of all trade secrets"); *Alcatel*, 239 F. Supp. 2d at 670 (finding Alcatel's damages claim flawed in part because "Alcatel and its damages expert fail to present evidence of apportionment").

Ugone ignored this requirement. Ugone ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. And Ugone's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. As discussed above, Ugone ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See supra* 9–10.

Ugone's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In excluding a similarly flawed damages opinion in *Alcatel*, this Court held that a damages expert's "attempt to attribute every penny" of the value defendant received to the "alleged trade secrets" instead of properly apportioning damages "reek[ed] of incongruity and underscore[d] the speculative nature" of that expert's opinion. 239 F. Supp. 2d at 671. The same result should obtain here.

Indeed, Ugone's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ are far more problematic than the ones this Court rejected in *Cassidian* and *Alcatel*. Ugone ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

*Powder Springs Logistics, LLC*, 2020 WL 7330715, at *5 (D. Del. Jan. 13, 2020); *Contour IP Holding, LLC v. GoPro, Inc.*, 2021 WL 75666, at *11–12 (N.D. Cal. Jan. 8, 2021).

███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Because Ugone's opinions on the purported trade secret misappropriation damages would only mislead and confuse the jury, they should be excluded in their entirety.

## II.    UGONE'S ████████████████████████ IS SIMILARLY SPECULATIVE AND UNSUPPORTED BY THE RECORD.

Ugone concedes from the outset that ████████████████████████████

███████████████████████████████████████████████

██████ Ex. A ¶ 8 (emphasis added). According to Ugone, ████████████████████

███████████████████████████████████████████████

███████████████████████████ Ex. A ¶ 10 (emphasis added).

Notwithstanding this striking admission that ████████████████████████████████

████████████████████████████████ Ugone nevertheless ███████████

███████████████████████████████████████████████ *Id.*

Ugone's purported "methodology" is nothing more than a conclusory opinion that the

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ Ex. A ¶ 60 (emphasis added). Ugone does not (and cannot) provide any context whatsoever for how he arrived at this results-oriented conclusion. Instead, Ugone simply jumps to this conclusion without any analysis, explanation, or citation to economic literature or authority. Indeed, Ugone's ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████ *See* Ex. A ¶¶ 56, 60.

13



Ugone's opinion thus boils down to nothing more than ███████████████████

██████████████████████████████████.[7] There is nothing scientific or

reliable about it.[8] In fact, Ugone's ████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████. It is precisely this kind of improper legal argument masquerading as

expert opinion that courts have repeatedly rejected. *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236,

240 (5th Cir. 1983) ("[A]llowing an expert to give his opinion on legal conclusions to be drawn

from the evidence both invades the court's province and is irrelevant."); *Roe v. Patterson*, 2022

WL 987814, at *2 (E.D. Tex. Mar. 31, 2022) ("[A]n expert may not render conclusions of law.").

Ugone's opinion should meet with the same fate.

**III.    UGONE'S "████████████████████ IS RANK HEARSAY**

Ugone asserts that ████████████████████████████████████████████

████████████████████.[9] Ex. A ¶ 62. But Ugone ████████████████████████

████████████████████████████████████████████████████████████████

████████████ Ugone ██████████████████████████████████████████████

████████████████████████████████████████████████████████████ Ex. B

57:3–58:12. Instead, Ugone relied ████████████████████████████████████

████████████████████████████████ Ex. B 45:5–21, and ████████████████

_____

[7] Ugone also ████████████████████████████████████████████████████

████████████████████████████████████████ Ex. A ¶ 60. But Ugone

[8] *See Fletcher v. Allstate Tex. Lloyd's*, 2022 WL 2980949, at *4 (E.D. Tex. July 25, 2022) (finding expert's opinion unreliable where he failed to provide the bases for his opinions, or "*how*" he reached his determination); *United States v. St. Luke's Episcopal Hosp.*, 2008 WL 11407300, at *3 (S.D. Tex. May 20, 2008) (holding that report lacking "reasoning and thought process" leading to ultimate opinion failed to satisfy requirements).

[9] Ugone confirmed at deposition that ████████████████████████████████ ████████████████████████████ Ex. B 56:19–57:2; 142:1–7.

██████████**al**

██████████████████████████ Ex. B 61:17–21 (emphasis added).

Opinions like these—where the expert "has no apparent independent basis for knowledge on that point" and is not "doing anything more than simply relaying hearsay evidence from other sources"—are inappropriate topics for expert testimony. *See Robroy Indus.-Tex., LLC v. Thomas Betts Corp.*, No. 2:15-cv-00513-WCB, 2017 WL 1319553, at *11 (E.D. Tex. Apr. 10, 2017) (Bryson, J.).  As such, Ugone's "actual losses" opinion should be excluded under *Daubert*.

## IV.    UGONE'S ██████████████████ OPINION IS IMPROPER.

Ugone also assumes that, █████████████████████████████████

████████████████████████████████████████████

██████████████████████████ Ex. A ¶ 75. Ugone opines that ██████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████ *Id*.

But any allocation of damages, if necessary, must be based on a jury's apportionment of fault, for which expert testimony is improper. *See, e.g., Lyondell Chem. Co. v. Albemarle Corp.*, 2007 WL 5527509, at *3 (E.D. Tex. Mar. 9, 2007) (excluding expert testimony on grounds that determining the proper allocation of remediation costs is uniquely within the province of the fact finder and expert assistance on this subject is unnecessary and improper); *Cross Creek Multifamily, LLC v. ICI Constr., Inc.*, 2020 WL 8254812, at *8 (S.D. Miss. Dec. 1, 2020) (excluding under *Daubert* experts' opinions as to purported allocations of damages "that have no regard to 'fault'" because such opinions "make[] little sense and would be confusing to say the ██████

## CONCLUSION

For the foregoing reasons, Ugone's opinions should be excluded in their entirety.

Dated: June 26, 2023

Respectfully submitted,

By:  */s/ Melissa C. Pallett-Vasquez*

Melissa C. Pallett-Vasquez (*pro hac vice*)
mpallett@bilzin.com
Ilana Drescher (*pro hac vice*)
idrescher@bilzin.com
Matthew Tieman (*pro hac vice*)
mtieman@bilzin.com
**BILZIN SUMBERG BAENA PRICE &
    AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone: (305) 374-7580
Facsimile:  (305) 374-7593
ekravets@bilzin.com
eservice@bilzin.com

Jennifer L. Truelove
State Bar No. 24012906
jtruelove@mckoolsmith.com
Samuel Franklin Baxter
State Bar No. 01938000
sbaxter@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone:  (903) 923-9000
Facsimile:  (903) 923-9099

*Attorneys for Counterclaim Defendant
Staton Techiya, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, a true and correct copy of the above and foregoing document has been delivered to all counsel of record.

By: */s/ Melissa C. Pallett-Vasquez*
Melissa C. Pallett-Vasquez

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and made a good faith effort to resolve the matter presented herein. Counsel conferred via telephone on June 22, 2023. Counsel with decision making authority were on the call for both Techiya and Samsung. The parties were unable to resolve the dispute presented in this motion and the motion is opposed.

By: */s/ Melissa C. Pallett-Vasquez*
Melissa C. Pallett-Vasquez