IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| STATON TECHIYA LLC and SYNERGY IP CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | CIVIL ACTION NO. 2:21-cv-00413-JRG-RSP |

## REPORT & RECOMMENDATION

Before the Court are four Motions for Summary Judgment filed by Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Samsung"). First, Samsung's Motion for Summary Judgment of No Infringement of the '982 Patent. **Dkt. No. 436**. Second, Samsung's Motion for Summary Judgment of No Infringement of the '259 Patent. **Dkt. No. 442**. Third, Samsung's Motion for Summary Judgment of No Infringement of the '400 Patent. **Dkt. No. 443**. Finally, Samsung's Motion for Summary Judgment of Lack of Entitlement to Damages for Techiya. **Dkt. No. 434**. For the reasons that follow, Samsung's motions, Dkt. Nos. 434, 436, 442, & 443, should be **DENIED**.

### I. BACKGROUND

Plaintiffs Staton Techiya LLC ("Techiya") and Synergy IP Corporation ("Synergy") filed an initial complaint, which was superseded by an Amended Complaint, alleging patent infringement against Samsung. Dkt. No. 11. Asserted in that Amended Complaint were U.S. Patent Nos. 8,111,839; 8,254,591; 8,315,400; 9,124,982; 9,270,244; 9,491,542; 9,609,424; 10,405,082; 10,966,015; 10,979,836; 11,039,259; 11,057,701; 11,217,237; & 11,244,666. *Id.* at 2–4.

1

Each of the asserted patents relates in some way to audio devices, such as earphones, headphones, or microphones. For example, the '839 and '982 Patents "relate[] to earpieces, in particular . . . recording audio for a particular time span while the earpiece is in use." '839 Patent at 1:14–17; *see also* '982 Patent at 1:16–19. These patents teach "first and second monitoring assemblies mounted in an earpiece that occludes and forms an acoustic seal of an ear canal." '839 Patent at [57]. The first and second monitoring assembly have an ambient sound microphone (ASM) and an ear canal microphone (ECM), respectively. *Id.* The claimed systems and methods use those microphones to record both the ambient and actual sound exposure to a user, thereby allowing the user to keep records of personal sound exposure, such as recent conversations. *Id.* at 5:65–66.

As another example of the patents' subject matter, the '082 Patent and '015 Patent "relate[] to acoustic keyword detection and passthrough . . . devices that can be acoustically controlled." '082 Patent at 1:14–16; '015 Patent at 1:15–17. These patents explain how sound-isolating (SI) earphones and headsets "acoustically detach" users from their local sound environment. '082 Patent at 1:27–30. To address this need, the patents teach a method for activating ambient sound pass-through in an earphone in response to a detected keyword. A device implementing the method analyzes a signal from an ASM. When the device detects a predetermined keyword in the ASM signal, it adjusts the gain of any audio content being delivered, thereby allowing the earphone wearer to hear the spoken keyword and take appropriate action, such as pausing or reducing the audio content level. *See generally id.* at 2:26–34.

A *Markman* hearing was held in this case, and a Claim Construction Order was entered and adopted. Dkt. No. 285; Dkt. No. 335. In addition to the adopted claim construction, the Court entered an order construing two additional agreed upon claim constructions. Dkt. No. 379.

Generally, Plaintiffs assert that Samsung infringes the asserted patents "by making, using, selling and/or offering to sell, in this District and elsewhere in the United States, and/or importing into this District and elsewhere in the United States, certain Bixby-enabled smartphones and earphones . . . ." Dkt. No. 11 ¶ 30. Plaintiff's Amended Complaint includes a request for enhanced damages for willful infringement and pre-suit damages. Dkt. No. 11 at 49–50; *see* Dkt. No. 434 at 4. In addition to answering the Amended Complaint, Samsung asserted counterclaims generally "regarding non-infringement, invalidity, and to address a betrayal of trust by former executives and senior attorneys whom Samsung relied upon to direct patent licensing and litigation on its behalf and with whom Samsung shared its highly sensitive confidential information and strategies regarding these issues." Dkt. No. 94 at 44.

## II.   LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. Substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

### III. SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT OF THE '982 PATENT

Samsung filed their Motion for Summary Judgment of No Infringement of the '982 Patent on two grounds, (1) that the accused products do not meet the independent Claim 1 preamble limitation of "always-on" and (2) that the accused products do not meet the limitation of dependent claim 7. Dkt. No. 436; Dkt. No. 592. Plaintiffs filed a response and sur-reply in opposition to the motion. Dkt. No. 503; Dkt. No. 552.

#### A. "Always-on" limitation of Claim 1's preamble

Previously the Court construed the preamble of Claim 1, "An Always-On Recording System (AORS) comprising . . .," as limiting for the phrase "Always-on." Dkt. No. 285 at 19, 21 ("Based on both the patent's description of the invention as a whole and Techiya's IPR-response statements, this preamble is limiting"). Accordingly, "always-on" is an additional limitation found in the preamble and would need to be met by the accused products to satisfy infringement.

Samsung asserts that the accused products are not "always-on" but are "sometimes-on" failing the limitation. Dkt. No. 436 at 9. In support of this assertion, Samsung indicates that the accused products' "circular buffer," referred to as PipedInputStream, is not constantly recording. *Id.* at 9–10. Further, Samsung contrasts the intermittent nature of spoken Bixby commands with the '982 Patent's overall purpose of evaluating a sound experience throughout the day. *Id.* In sum, Samsung asserts that conditional and occasional recording, as well as listening, are not the same as constantly recording, which Samsung asserts the claim construction demands. *Id.* at 11, 12.

Techiya responds that the accused products meet the "always-on" limitation. First, Plaintiffs cite to their expert, Mr. Anagnos, who disagrees with Samsung's contention and asserts

4

the accused products meet the limitation of "always-on." Dkt. No. 503 at 7–8. Further, Plaintiffs contend that Dr. Plock, Samsung's source code expert, "opines that the accused Samsung products 'will constantly listen for the user to utter "Hi Bixby"'" *Id.* at 8 (citing Dkt. No. 503-5 ¶¶ 74–76). Second, Techiya asserts that Samsung's marketing materials support that the accused devices are always on. *Id.* Techiya contends this is supported by Samsung's corporate witness, Anil Yadav, who testified that "the accused devices constantly record input audio streams, digitize the audio from its analog form, and stream the audio into an audio buffer, which is sent to a wake word detection engine." *Id.* (citing Dkt. No. 503-11; Dkt. No. 503-3 ¶¶ 123, 131, 430). Finally, Techiya disagrees that the Court's previous construction, that the preamble is limiting for "always-on," results in a requirement that the infringing product constantly record. *Id.* at 9.

The Court finds that a genuine issue of material fact exists for the "always-on" limitation of Claim 1. Exemplary of the ongoing factual dispute is the disagreement as to whether "listening" performed by the accused products satisfies the limitation. The Court's previous construction, that the preamble is limiting, does not confirm Samsung's position that the device must constantly record all audio inputs such that the inputs are committed to a form of long-term storage. Additionally, while Samsung asserts that the Bixby assistant only intermittently responds to audio input, the Court is not persuaded that the accused products could not meet the limitation based on processing audio for identification of wake-up events. The Court finds that a reasonable jury could find that the accused products meet the "always-on" limitation based on the facts presented on this record.

### B. Dependent Claim 7 of the '982 Patent

Claim 7 of the '982 Patent was not construed at the claim construction stage and is as follows:

> 5. The system according to claim 1, where the system is further configured to receive one or more of an audio content signal from the mobile phone or at least one further audio signal from an other device.
> 6. The system according to claim 5, where the other device includes at least one of an earphone device worn by a user of the mobile phone, a further earphone device worn by a different user, a media player or a computing device.
> 7. The system according to claim 5, the system further comprising:
>   a signal processing circuit configured to process at least one of the ASM signal, the audio content signal or the at least one further audio signal; and
>   a signal router and switching matrix to select which signals among the ASM signal, the audio content signal and the at least one further audio signal are recorded into the data storage device.

'982 Patent, 15:8–24.

Samsung asserts that the accused products do not infringe claim 7 since the products can only record the "ASM Signal" to the "PipedInputStream" and not any of the additional signals facially required by the claim. Dkt. No. 436 at 12, 14 ("Because claim 7's plain language requires the ability to select which among three signals are recorded, and the accused Samsung products indisputably lack that ability, there is no infringement").

Techiya responds that the accused products do meet the limitations of claim 7 based on Samsung's technical documents and their expert's testing. Dkt. No. 503 at 12 (citing Dkt. No. 503-3 ¶¶ 520–521) ("Mr. Anagnos contends that signals from the smartphone or tablet (the ASM Signal) and from the earbuds (the at least one further audio signal) can be recorded"). Plaintiff identifies the expert's reasoning and process for finding that the relevant functionality is present in the accused products. *Id.* Samsung contests these readings and further emphasizes that the accused products lack the ability to record certain signals. Dkt. No. 552 at 6–8.

The Court finds that a genuine issue of material fact is still present for Claim 7 of the '982 Patent. Despite Samsung's arguments about the "plain meaning" of the claim language, what is actually in dispute is the application of the claim language to the accused products, a role reserved for the jury. Further, Samsung's disagreement with Mr. Anagnos's methods and findings are not reasons alone to grant summary judgment, but are properly addressed in either the *Daubert* context or through vigorous cross-examination at trial.

Accordingly, with the findings that genuine issues of material fact are still present for the "always-on" limitation of the Claim 1 preamble and for Claim 7, it is recommended that Samsung's Motion for Summary Judgment of No Infringement of the '982 Patent be **DENIED**.

## IV. SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT OF THE '259 PATENT

Samsung filed its Motion for Summary Judgment of No Infringement of the '259 Patent asserting that the accused products fail to meet the "opening a communication channel . . ." limitation of Claim 1. Dkt. No. 442 at 5; Dkt. No. 549. Plaintiffs filed a response and sur-reply in opposition of the motion. Dkt. No. 488; Dkt. No. 589.

The limitation of Claim 1, "opening a communication channel with a remote server if a trigger event is detected," was construed to mean "when a trigger event is detected, a communication channel must be opened." Dkt. No. 285 at 43–45. Referencing this construction, Samsung contends that the accused products will sometimes not open a communication channel in response to a trigger event, failing the limitation. Dkt. No. 442 at 8, 9. In disagreement with Techiya's expert, Samsung asserts "none of the evidence that Mr. Kleinschmidt cites supports his conclusion that a communication channel will be opened 'as a matter of course' in response to 'Hi Bixby' if the product 'is connected to a network.'" Dkt. No. 442 at 12. Samsung asserts that a network connection alone is not sufficient to demonstrate a channel will be opened, just that

7

network connectivity is required for a successful connection. *Id.* at 11–12. Further, Samsung contends that there are additional product states in which a communication channel will not be opened, referencing safety concerns, ongoing phone calls, and the device being in "Kids Mode" as examples. *Id.* at 12; Dkt. No. 549 at 5. Samsung indicates "18 conditions exist that will preclude an accused Samsung product from opening a connection to a remote Bixby server" in contrast to the construed limitation's requirement that "a communication channel must be opened." Dkt. No. 549 at 4.

Techiya responds that the "edge cases" discussed by Samsung do not avoid a factual dispute regarding application of the claim limitation to the accused products. Dkt. No. 488 at 7–8. Techiya references testimony by Mr. Yadav, Samsung's corporate designee for the Bixby platform, and Mr. Sung Han Kim, a Samsung engineer, that only a lack of network connectivity would cause a communication channel to not occur upon a trigger phrase. *Id.* at 8 (citing Dkt. Nos. 488-2, 488-4, & 488-6). Techiya also references their own experts, Mr. Kleinschmidt and Dr. Plock, to support the position that the accused products meet the claim limitation, disputing Samsung's assertions. Dkt. No. 488 at 9–10. Further, Techiya asserts that the theories regarding the additional states in which a channel will not be opened are new theories not discussed by Samsung's experts or asserted prior to the instant motion. Dkt. No. 488 at 9–10.

The Court finds that a genuine dispute of material fact is still present for Claim 1 of the '259 Patent. What is presented by the parties is a factual dispute concerning whether the construed claim language reads on the accused products. At its heart, Samsung asserts that its accused products do not open a communication channel upon every triggering event, and Techiya asserts that the accused products do open a communication channel for every wake-up event. Evaluating conflicting evidence and credibility of the supporting witnesses are roles for the trier of fact.

Accordingly, it is recommended that Samsung's Motion for Summary Judgment of No Infringement of the '259 Patent be **DENIED**.

## V. SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT OF THE '400 PATENT

Samsung filed its Motion for Summary Judgment of No Infringement of the '400 Patent asserting that the accused products do not determine a "single overall noise level." Dkt. No. 443; Dkt. No. 551. Techiya filed a response and sur-reply in opposition to the motion. Dkt. No. 489, Dkt. No. 593.

The term "a background noise signal" found in Claims 14 and 15 of the '400 Patent was construed as an agreed construction to mean "a single overall background noise signal, as opposed to noise in subband signals." Dkt. No. 379 at 1. Similarly, the term 'a background noise level" found in Claims 1, 7, and 16 was construed by agreement to mean "a single overall background noise level, as opposed to noise levels associated with particular subband signals." *Id.*

Samsung asserts that the accused products accomplish their functionality without determining an overall background noise level, instead estimating noise levels in certain subbands. Dkt. No. 443 at 9. Samsung contends that based on these noise level estimates an operational state is determined, without ever relying on an aggregated single overall noise level or signal. *Id.* Samsung contests the findings and testimony of Techiya's experts while also disagreeing with Techiya's framing of the opinions of the Samsung experts. Dkt. No. 443 at 10–12.

Techiya responds that Samsung does rely on a single overall background noise level. Specifically, Techiya indicates that its source code expert, Dr. Plock, is consistent with Samsung's expert, Dr. Baek, showing that only one operational state can be used at a time. Dkt. No. 489 at 7. Further, Techiya points to a Samsung whitepaper showing that after the ambient noise level is detected and categorized, audio from the inner and outer microphones are combined based on the

9

noise level. *Id.* at 6. Finally, Techiya contends that Samsung's assertions, that determinations of noise levels are made at the subband level, are unsupported by the record. *Id.* at 9.

The Court finds that a genuine dispute of material fact is still present for the contested limitation of the '400 Patent. What is present in the parties' briefing is a dispute of competing evidence and witness testimony, highlighted by assertions regarding conflicting expert testimony. Upon review of the record, a reasonable jury could find that the accused products meet the disputed limitation. Conflicting witness testimony and competing factual allegations can be properly resolved by the jury.

Accordingly, it is recommended that Samsung's Motion for Summary Judgment of No Infringement of the '400 Patent be **DENIED**.

## VI. SAMSUNG'S MOTION ON LACK OF ENTITLEMENT TO DAMAGES

Samsung's Motion for Summary Judgment on Lack of Entitlement to Damages requests a finding that Techiya is not entitled to certain damages: (1) failure to meet the marking requirements of § 287 for pre-suit damages and (2) damages during the period before termination of Synergy and Techiya's patent agreement. Dkt. No. 434 at 4. Techiya filed a response and sur-reply in opposition of the motion. Dkt. No. 498; Dkt. No. 590.

### A. Marking Pursuant to § 287

1. <u>Legal Standard</u>

Generally, a patentee can recover damages that occurred up to "six years prior to the filing of the complaint … for infringement in the action." 35 U.S.C. § 286. An exception to this rule is that "[p]ursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles [providing constructive notice] or notify infringers of his patent [providing actual notice] in order to recover damages." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876

F.3d 1350, 1365 (Fed. Cir. 2017) ("*Arctic Cat I*") (citing *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)); *see also Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) ("a party that does not mark a patented article is not entitled to damages for infringement prior to actual notice").

This requirement also extends to a patentee's licensees. *Arctic Cat I*, 876 F.3d at 1366 (citing § 287(a)). However, the burden is lessened when licensees are involved as the Federal Circuit has recognized "that it may be difficult for a patentee to ensure his licensees' compliance with the marking provisions …." *Id*. When licensees are involved, courts should consider "whether the patentee made reasonable efforts to ensure compliance with the marking requirements." *Id*. (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1112 (Fed. Cir. 1996)).

"[T]he marking statute serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Arctic Cat I*, 876 F.3d at 1366 (citing *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)).

"Compliance with § 287 is a question of fact." *Id*. "[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id.* at 1368. This is a "low bar" such that "[t]he alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent" by a burden of production. *Id.* "Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.*

11

If the patentee does not make this showing, it cannot recover damages before the date of actual notice. *Arctic Cat I*, 876 F.3d at 1368. "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*") (citing *Amsted Indus. Inc., v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994)); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001) (citing *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1470 (Fed. Cir. 1997)).

2. Analysis

Samsung asserts that Techiya cannot meet the burden of compliance with § 287 marking requirements based on Techiya's sales of development kits containing physical earbuds and the making of these same physical earbuds by Techiya and its manufacturing partners. Dkt. No. 434 at 5. Samsung asserts that Techiya's contentions that the products were only prototypes is in contrast with the manufacture and sale of development kits. *Id.* at 6. Techiya responds that there was no duty to mark the prototypes since the prototypes were not commercially sold and any demonstrations of the prototypes were conducted subject to an NDA. Dkt. No. 498 at 8. Samsung replies that the patented products offered for sale via demos under NDA are not exempt from the marking requirement. Dkt. No. 542 (citing *Bd. Of Regents, Univ. of Texas Sys. v. Bos. Sci. Corps.*, No. CV 18-392-GBW, 2023 WL 348325, at *3 (D. Del. Jan. 20, 2023)). Techiya clarifies Samsung's framing of their response by asserting the prototypes were never offered for sale or sold, consistent with previous interrogatory responses. Dkt. No. 590 at 7. Further, Techiya reasserts the secret prototypes were shown only under NDA. *Id.*

The Court is unconvinced that the marking requirements of § 287 attach to non-public prototypes that are neither sold nor intended for sale, which are no "products" within the meaning

12

of the Act. *See, generally, Nike v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (history and purpose of the Act). Nor is this analogous to Samsung's cited authority where unmarked patent practicing products were provided to a licensee. *See Bd. Of Regents, Univ. of Texas Sys. V. Bos. Sci. Corp.*, 2023 WL 348325, at *3 (D. Del. Jan. 20, 2023) ("Here, by comparison, Plaintiffs admit that TissueGen provided unmarked products 'to a licensee on the patent under a [non-disclosure agreement]' in 'private transactions pursuant to consulting agreements....'"). Accordingly, the Court does not find that a duty to mark existed for the prototypes made for developmental purposes and demonstrated subject to NDAs.

### B. Techiya's Rights to Seek Damages for the Period before Termination of the Synergy Agreement

Prior to litigation, Synergy and Techiya entered into a "Patent License Agreement" that was subsequently terminated. *See* Dkt. No. 498-24 (entitled Patent License Agreement); Dkt. No. 498-25 (entitled Post Patent License Termination Agreement); Dkt. No. 498-26 (entitled Supplement to Post Patent License Termination Agreement). The parties dispute the effect these agreements and subsequent terminations have on the rights in suit.

Samsung asserts that the termination agreement had no retroactive effect, that no express right to pre-termination damages was given to Synergy, and that Synergy contracted to a waiver of said damages. Dkt. No. 434 at 8. Further, Samsung contends that Synergy was given the full range of rights to the patents-in-suit, including the exclusive right to sue for damages, making them the effective patent owner. *Id.* at 9. Samsung asserts these rights were not reverted upon termination of the agreement. *Id.* Techiya responds that they hold all substantial rights to the patents-in-suit, including the right to sue for damages prior to the termination date of February 6,

2023. Dkt. No. 498 at 13. Further, Techiya responds that Samsung's supporting authorities are related to assignments, not licenses, and therefore not applicable. *Id.* at 14.

The Court finds that the Patent License Agreement entered between Synergy and Techiya was a license, not an assignment. Accordingly, upon termination, all rights reverted to Techiya in accordance with the plain language of the agreement. Techiya is not barred from seeking damages for the period before the termination of the Patent License Agreement based on lack of enforcement rights.

Accordingly, it is recommended that Samsung's Motion for Summary Judgement Regarding Certain Damages, Dkt. No. 434, be **DENIED**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 5th day of November, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE