IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| STATON TECHIYA, LLC and SYNERGY IP CORPORATION,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>　　　　Defendants. | Civil Action No. 2:21-cv-00413-JRG-RSP (LEAD CASE)<br><br>Civil Action No. 2:22-cv-00053-JRG-RSP (MEMBER CASE)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO SAMSUNG'S RULE 72(b) OBJECTION TO THE REPORT AND RECOMMENDATION REGARDING: (ii) MARKING PURSUANT TO § 287, AND (ii) DAMAGES FOR THE PERIOD PRIOR TO TERMINATION OF THE SYNERGY AGREEMENT**

## I. Samsung's Objection Regarding its Section 287 Marking Defense Fails

***First***, as the Report properly notes, on summary judgment and with all inferences in Techiya's favor, "the prototypes were never offered for sale or sold, consistent with [Techiya's] previous interrogatory responses" and "the secret prototypes were shown only under NDA." Dkt. 718 at 12. That the prototypes were only shown, if ever, under NDA, is supported by substantial evidence. *See* Dkt. 498 at 2-4, 6-7; Ex. A, Keady Decl. at ¶¶ 2-9; Ex. B at 2; Ex. C, Keady Tr. at 120:14-21; Ex. D, Seyal 1/23/23 Tr. at 34:6-36:13, 36:25-37:7, 52:5-53:20; Ex. E, Goodman 1/26/23 Tr. at 11:25-15:2; Ex. F, STRONGFORCE_00000017; Dkt. 590 at 1-3.

***Second***, the Report properly holds that the "Court is unconvinced that the marking requirements of § 287 attach to non-public prototypes that are neither sold nor intended for sale, which are no[t] 'products' within the meaning of the Act." Dkt. 718 at 12; *see also id.* at 13 ("Accordingly, the Court does not find that a duty to mark existed for the prototypes made for developmental purposes and demonstrated subject to NDAs."). Secret prototypes do not need to be marked. Finding otherwise is inconsistent with the policy of the marking statute and Federal Circuit precedent because the patent marking statute is not triggered *before* a patentee begins shipping patented products. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (collecting cases); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537-38 (Fed. Cir. 1993) ("The date that [patentee] began marking its products is irrelevant for purposes of [§ 287(a)], because marking alone without distribution provides no notice to the public where unmarked products are continuing to be shipped"); *Wokas v. Dresser Indus., Inc.*, 978 F. Supp. 839, 848 (N.D. Ind. 1997) (citing *Am. Med. Sys.* and holding that patentee is not obligated to mark prior to shipping date); *Formax, Inc v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-C-0298, 2013 WL 12178064, at *2 (E.D. Wis. Aug. 29, 2013) (citing *Am. Med. Sys.* and holding that the period for

requiring compliance with the marking statute "commences from the date the patentee starts shipping its products, rather than the date the patentee actually begins marking"). The Federal Circuit understood the realities of inventive entities and held that the patent marking statute is triggered when patented articles are "distributed" or "shipped." *Am. Med. Sys., Inc*, 6 F.3d at 1537-38; *Wokas*, 978 F. Supp. at 848; *Formax, Inc.*, 2013 WL 12178064, at *2. Samsung does not distinguish this long line of authority and instead relies on a single inapposite case that held that the patent marking statute applies to confidential sales. *Bd. of Regents, Univ. of Texas Sys. V. Bos. Sci. Corp.*, No. CV 18-392-GBW, 2023 WL 348325, at *3 (D. Del. Jan. 20, 2023). But here, there were no sales or even offers for sale as discussed above.

*Third*, even if the marking requirement applied to secret prototypes like those at issue in this case, there is a triable issue of fact whether the prototypes practiced certain patents-in-suit. Dkt. 498 at 5; Dkt. 590 at 4. Section 287 only imposes a duty to mark for "patented articles." Something that does not practice a patent is not a "patented article." Claim 1 of the '982 patent—the only independent claim—requires "a monitoring assembly mounted on a mobile phone." Ex. M, '982 patent. ████████████████████████████████████████████████████████████████████████████████████████. Each of independent claims 1, 14 and 18 of the '400 patent requires the use of an earpiece that determines a background noise level or signal and further makes adjustments based on that level or signal. Ex. L, '400 patent. ████████████████████████████████████████████████████████████████████████████████. Accordingly, even if the marking requirement applied to secret prototypes like those at issue here, there was no duty to mark the prototypes with these particular patents. Indeed, at best for Samsung, there would have been a disputed issue of fact whether the prototypes practiced the '982 and '400 patents. Ex. A, Keady Decl. ¶ 10; Ex. C, Keady Tr. at 26:25-37:25,

49:7-50:5; Ex. M, Ex. L.

## II. Samsung's Arguments Regarding Pre-Termination Damages Fail

The R&R correctly held that Techiya is entitled to damages for the period before termination of the Patent License Agreement ("PLA") between Synergy and Techiya, because the agreement was "a license, not an assignment," and therefore, "upon termination, all rights that Synergy had reverted to Techiya in accordance with the plain language of the agreement." Dkt. No. 718, at 14.  Samsung objects to this conclusion, however, in their objections, Samsung rehashes the arguments that the Court already considered and rejected.

Samsung continues to assert that the PLA was an assignment, because it granted Synergy an exclusive license, ████████████████████████████████████████ Dkt. No. 733, at 3.  But this in no way means that "all substantial rights" in the patents were conveyed to Synergy to render it the effective patent owner.  In fact, it is undisputed that Techiya remained legal title holder of the patents-in-suit and retained the right to practice its own patents.  Dkt. No. 498, at 7-8; Dkt. No. 498-24 (Ex. W), §2.7; 10/6/23 Pretrial Hearing Tr. 73:14-20.  Retention of such "vitally important" rights is indicative of the PLA being a license, not an assignment. *See Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010) (citing *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193-94) (Fed. Cir. 2007) (noting that "transfer of the exclusive right to make, use, and sell products or services under the patent is vitally important to an assignment"); *Abbott Lab'ys v. Diamedix Corp.*, 47 F.3d 1128, 1131-33 (Fed. Cir. 1995) (finding no assignment where patent owner retained right to make, use, sell patented products and noting that with grant of a license, the title remains in the owner of the patent).

The PLA lacks other indicia of having transferred all substantial rights as well. *Cochlear Corp.*, 604 F.3d at 1360-61 (listing rights to be examined in determining whether transfer of those rights amounted to assignment). Notably, Techiya retained the right ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. No. 498-24 (Ex. W), §2.6, §2.8), which are the hallmarks of an ownership interest in the patents. *Propat*, 473 F.3d at 1191. Techiya also retained economic interest in the patents and a substantial measure of control over decisions affecting the patent rights such as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*. at 1191-92; *see also*, *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1231-1233 (Fed. Cir. 2019); *e.g.,* Dkt. No. 498-24 (Ex. W), §2.5, §3.1, §4.2, §8.2, §8.3. Simply put, Techiya retained substantial rights to the patents-in-suit, and Samsung failed to show otherwise. Samsung failed to explain in its briefs how the scope and nature of the contractual rights licensed to Synergy were sufficiently "substantial" to override the plain language of the PLA which states that it is a patent license agreement rather than a sale or assignment thereof. The R&R was therefore correct to conclude that the PLA was a license, not an assignment, after considering all Samsung's arguments and the cases Samsung relied upon. *See* 10/6/23 Pretrial Hearing Tr. 77:1-80:8. Consequently, Samsung's argument that Techiya cannot pursue pre-termination damages because Synergy did not expressly assign back that right inevitably fails as it is premised on the incorrect position that the PLA was an assignment. 10/6/23 Pretrial Hearing Tr. at 79:15-20.

To be clear, §2.2 of the PLA provides that upon termination, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. No. 498, at 7; Dkt. No. 498-24 (Ex. W). The same

consequence was reinforced by the Post Patent License Agreement and supplement to the same. Dkt. No. 498, at 7; Dkt. No. 498-25 (Ex. X), at §1; Dkt. No. 498-26 (Ex. Y), at §§1-2.  The R&R was correct to conclude that all contractual rights Synergy had under the PLA "reverted to Techiya in accordance with the plain language of the agreement" and therefore Techiya is not barred from seeking pre-termination damages.  Dkt. No. 718, at 14.  Samsung's waiver argument remains meritless as the PLA was terminated on February 6, 2023 (Dkt. No. 498-25 (Ex. X)), so the subsequent ████████████████████████ of the Post Patent License Termination Agreement is thus irrelevant as to whether Techiya has all substantial rights, including the right to sue for past damages.  Dkt. No. 498, at 8; Dkt. No. 590, at 4; Dkt. No. 498-25 (Ex. X), at § 2.A; Dkt. No. 498-26 (Ex. Y).

      Samsung's objections therefore should be overruled.

Dated: December 4, 2023

Respectfully submitted,

*/s/ Bradford A. Cangro*
Bradford A. Cangro (Admitted in TXED)
D.C. Bar No. 495996
bradford.cangro@pvuslaw.com
Robert J. Gaybrick (admitted pro hac vice)
D.C. Bar No. 954925
robert.gaybrick@pvuslaw.com
Roger D. Taylor (Admitted in TXED)
Georgia Bar No. 342927
roger.taylor@pvuslaw.com
Jacob A. Snodgrass (Admitted in TXED)
D.C. Bar No. 982661
jacob.snodgrass@pvuslaw.com
Ghee J. Lee (Admitted in TXED)
D.C. Bar No. 1019706
ghee.lee@pvuslaw.com
**PV LAW LLP**
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
T: (202) 371-6861
F: (202) 888-3163

Michael Flynn-O'Brien (Admitted in TXED)
California State Bar No. 291301
mflynnobrien@bdiplaw.com
Aaron R. Hand (Admitted in TXED)
California State Bar No. 245755
aaronhand@bdiplaw.com
Robin K. Curtis (Admitted in TXED)
California State Bar No. 271702
rcurtis@bdiplaw.com
Elizabeth Day (Admitted in TXED)
California State Bar No. 177125
eday@bdiplaw.com
Jerry D. Tice II (Admitted in TXED)
Texas State Bar No. 24093263
Aden Allen (Admitted in TXED)
Texas State Bar No. 24064808
aallen@bdiplaw.com
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7241

                    Facsimile: (415) 426-4744

                    Jennifer L. Truelove
                    State Bar No. 24012906
                    jtruelove@mckoolsmith.com
                    **MCKOOL SMITH, P.C.**
                    104 East Houston Street, Suite 300
                    Marshall, Texas 75670
                    903.923.9000
                    903.923.9099 (fax)

                    *Attorneys for Plaintiff Staton Techiya, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who have consented to electronic service are being served with a copy of this document via email on December 4, 2023.

                    */s/ Bradford A. Cangro*
                    Bradford A. Cangro

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7)(B), I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

                    */s/ Bradford A. Cangro*
                    Bradford A. Cangro