**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| STATON TECHIYA, LLC and SYNERGY IP CORPORATION, | § § § § | |
| Plaintiffs-Counterclaim Defendants, | § § | Case Nos. 2:21-CV-00413-JRG-RSP; 2:22-cv-00053-JRG-RSP |
| v. | § § § | |
| SAMSUNG ELECTRONICS CO. LTD. and SAMSUNG ELECTRONICS AMERICA, INC. | § § § § § | |
| Defendants-Counterclaim Plaintiffs. | | |

**TECHIYA'S OPPOSITION TO SAMSUNG'S MOTION TO REDACT**
**INFORMATION FROM THE BENCH TRIAL TRANSCRIPT (DKT. 920)**

## **TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ........................................................................................................................ 1

**FACTUAL AND PROCEDURAL BACKGROUND** ................................................................ 1

**LEGAL STANDARD** ................................................................................................................. 3

**ARGUMENT** ............................................................................................................................... 4

    I.    Samsung Elicited Information in Open Court Regarding the Offer Amounts and Did Not Take Any Contemporaneous Steps to Keep That Testimony Out of the Public Record. ......................................................................... 4

    II.    The Information that Samsung Seeks to Redact Is Essential to the Public to Understand and Evaluate the Trial Record. ........................................................ 6

    III.    Samsung Has Not Shown That Public Disclosure of the Offer Amounts Exchanged Between Synergy and Samsung Will Put Samsung at a Competitive Disadvantage. ................................................................................... 8

**CONCLUSION** .......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
   2012 WL 3283478 (N.D. Cal. Aug. 9, 2012) ...........................................................................10

*Apple Inc. v. Samsung Elecs. Co.*,
   727 F.3d 1214 (Fed. Cir. 2012).................................................................................................10

*Bianco v. Glob. Med., Inc.*,
   2014 WL 3422000 (E.D. Tex. July 14, 2014) ...........................................................................4

*Cellular Commc'ns Equip. LLC v. Apple Inc.*,
   2017 WL 10311215 (E.D. Tex. Jan. 5, 2017)............................................................................9

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
   2015 WL 432012 (E.D. Tex. Feb. 2, 2015) ...............................................................3, 4, 6, 8, 9

*Ohio Willow Wood Co. v. Thermo-Ply, Inc.*,
   2008 WL 11411333 (E.D. Tex. June 27, 2008).........................................................................8

*Script Sec. Sols., LLC v. Amazon.com, Inc.*,
   2016 WL 7013938 (E.D. Tex. Dec. 1, 2016).............................................................................3

*In re Violation of Rule 28(d)*,
   635 F.3d 1352 (Fed. Cir. 2011)..............................................................................................3, 8

## INTRODUCTION

In its Motion, Samsung seeks to redact from the bench trial transcript the offer amounts exchanged between Samsung and Synergy that were discussed in open court—amounts that were expressly elicited by Samsung during its examination of witnesses—in an apparent attempt to withhold from the public information that contradicts the narrative Samsung has been advancing in connection with this litigation. But Samsung's Motion fails to provide any justification as to why these offer amounts should be redacted from the trial transcripts, much less "compelling reasons" to justify redactions of material that Samsung already chose to make part of the public record of this case. Instead, Samsung provides only the same type of naked, generic assertions that courts in the Eastern District of Texas have routinely rejected and cites to inapposite cases in which other parties have taken steps to protect information from disclosure, which Samsung failed to do.

Techiya respectfully submits that the Court should reject Samsung's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 26 and 27, 2024, the Court held a bench trial on Samsung's unclean hands affirmative defense to Techiya's patent infringement claims and Samsung's non-patent counterclaims against Techiya (with the exception of the misappropriation of trade secrets claim against Techiya that Samsung dropped just before the bench trial, Dkt. 881 at 2). *See* Dkts. 891, 903, 898–901.

In its publicly filed counterclaims, Samsung accused Techiya of conspiring with Synergy, its former exclusive licensee, and Synergy's principals to "extract undue patent licensing payments" from Samsung. Dkt. 28 at 64–67. Because Samsung never entered into a patent license with either Techiya or Synergy and thus no pricing terms were ever agreed upon, Samsung and Techiya both relied on the offer amounts exchanged between Samsung and Synergy to support their respective cases. Indeed, Samsung was the first party to enter evidence in open court of the

fact that Samsung and Synergy exchanged offers for a sublicense to Techiya's patents, as well as the amounts of some of those offers. *See* Mar. 26 Trial Tr. at 190:13–191:11.[1] Samsung elicited this testimony from Injung Lee, Samsung's only fact witness it made available at trial who had personal knowledge of the negotiations between Synergy and Samsung. The amounts of Samsung's offers to Synergy were then entered into evidence in open court during Techiya's cross examination of Mr. Injung Lee without any objection. *See* Mar. 26 Trial Tr. at 206:11–207:20.

Techiya likewise relied on the offer amounts exchanged by the parties in support of its defenses. Techiya put forward evidence at trial that, prior to Samsung's decision to file counterclaims, Samsung not only freely negotiated with Synergy for nearly a year without objection, but also made offers of ▮▮▮▮ and ▮▮▮▮—meaningful offer amounts that are inconsistent with Samsung's story. *See, e.g.*, DBTX-0017; CCDX-0026; CCDX-0034.0006; CCDX-0039.0001; CCDX-0041.0002; CCDX-0053.0001; Mar. 26 Trial Tr. at 198:11–199:7, 206:11–25, 207:6–20; Mar. 27 Trial Tr. at 75:20–76:3; 79:14–18, 80:2–5, 225:20–226:14. Indeed the offer amounts themselves make plain that Techiya's patent rights are very valuable, both to Techiya and Samsung. *See, e.g.*, Mar. 26 Trial Tr. at 209:21–210:4 (acknowledging that Samsung had "big exposure" to Techiya's patents); Mar. 27 Trial Tr. at 163:15–164:3 (stating that Techiya "had been given valuations" of its patent portfolio that were "in the hundreds of millions of dollars").

---

[1] Techiya disclosed the offer amounts in its opening. *See, e.g.*, Mar. 26 Trial Tr. at 37:15–17, 38:20–21, 40:22–41:4. Samsung did not object at the time. After Techiya's opening concluded, Samsung asked that Techiya agree to redact the offer amounts from its opening. Techiya agreed, but only with respect to its opening. In view of Samsung's subsequent efforts during the bench trial to put the offer amounts at issue in support of its case and Samsung's failure to move to seal the courtroom when any other witnesses discussed the offer amounts, Techiya does not believe there is good cause to seal the offer amounts discussed in Techiya's opening, but respects its previous agreement.

2

In fact, because both parties believed the offer amounts exchanged between Samsung and Synergy supported their respective arguments, in addition to Mr. Injung Lee, several other witnesses testified in open court regarding the amounts of those offers, as well as the contents of several other communications exchanged among Samsung, Synergy, and Techiya during that same timeframe concerning the sublicensing negotiations between Samsung and Synergy. Samsung never objected to the discussion of offer amounts by these witnesses, nor attempted to seal the courtroom when any such testimony was elicited.

After trial, on April 18, 2024, Samsung moved to redact from the trial transcript any testimony given in open court regarding the amounts of the offers exchanged between Synergy and Samsung. Dkt. 920.

## LEGAL STANDARD

"The Supreme Court has recognized the existence of a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Script Sec. Sols., LLC v. Amazon.com, Inc.*, 2016 WL 7013938, at *1 (E.D. Tex. Dec. 1, 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). "That right is implemented, the Fifth Circuit has explained, through 'a strong presumption in favor of a common law right of public access to court proceedings.'" *Kroy IP Holdings, LLC v. Safeway, Inc.*, 2015 WL 432012, at *1 (E.D. Tex. Feb. 2, 2015) (quoting *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010)). "[T]he court must 'weigh[] the interests advanced by the parties in light of the public interest and the duty of the courts.'" *In re Violation of Rule 28(d)*, 635 F.3d 1352, 1357 (Fed. Cir. 2011) (quoting *Nixon*, 435 U.S. at 602)). "[T]he decision to seal or redact public records 'must be made in light of the strong presumption that all trial proceedings should be subject to scrutiny by the public.'" *Kroy IP Holdings, LLC*, 2015 WL 432012, at *2.

3

The party seeking to redact trial transcripts has the burden of overcoming the strong presumption of public access to court records. *Bianco v. Glob. Med., Inc.*, 2014 WL 3422000, at *2 (E.D. Tex. July 14, 2014). To overcome this strong presumption, a "party must articulate compelling reasons supported by specific factual findings that outweigh the general history or access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kroy IP Holdings, LLC*, 2015 WL 432012, at *2. "'[C]ompelling reasons' must be shown to justify striking material that has been entered in the public record of a case." *Id.* at *3.

## ARGUMENT

The Court should deny Samsung's Motion because (i) the information Samsung seeks to redact was elicited by Samsung in open court without reservation and Samsung never objected to any other disclosure nor made any effort to seal the courtroom to prevent disclosure, (ii) the information is essential for the public to understand and evaluate the parties arguments and thus the public has a significant interest therein; and (iii) Samsung has failed to provide "compelling reasons" supporting the after-the-fact redaction from the public trial transcript of the offer amounts exchanged between Samsung and Synergy.

## I. SAMSUNG ELICITED INFORMATION IN OPEN COURT REGARDING THE OFFER AMOUNTS AND DID NOT TAKE ANY CONTEMPORANEOUS STEPS TO KEEP THAT TESTIMONY OUT OF THE PUBLIC RECORD.

Samsung seeks to redact from the trial transcript testimony that Samsung first elicited in open court. On March 26, 2024, during the first day of the two-day bench trial, Samsung called Mr. Injung Lee to the stand. Mr. Injung Lee was the only live witness Samsung made available at trial who had personal knowledge of the offers exchanged between Samsung and Synergy during the ten months that Samsung and Synergy negotiated a potential sublicense for Techiya's patents.

During Mr. Injung Lee's direct examination, Samsung elicited that Synergy made two offers to Samsung, one for ▮▮▮▮▮ and the other for ▮▮▮▮▮, including asking Mr. Injung

4

Lee to identify the amount of the first offer Synergy made. Mar. 26 Trial Tr. at 190:13–191:11 ("Q. And what was Doctor Ahn's first demand? A. His first demand was ▮▮▮▮."). Samsung also specifically asked Mr. Injung Lee how many offers Samsung made. Mar. 26 Trial Tr. at 190:13–191:11 ("Q. And how many counteroffers in total did Samsung make to that ▮▮▮▮ demand? A. We made two offers."). Finally, Samsung elicited from Mr. Injung Lee that, after making an "initial opening offer," Samsung "inten[ded] to continue the negotiation" and wanted to "narrow the gap" between Synergy's and Samsung's offers. Mar. 26 Trial Tr. at 190:25–191:5.

Techiya followed up on cross-examination. Again in open court, Mr. Injung Lee testified, without objection from Samsung, as to the amounts and timing of Samsung's offers. Mar. 26 Trial Tr. at 206:11–25; 207:6–20. Samsung's first offer, which Y.S. Kim presented to Dr. Ahn on September 23, 2021, was ▮▮▮▮, "which was ▮▮▮▮ for Samsung and ▮▮▮▮ for Harman." Mar. 26 Trial Tr. at 206:11–25. And Samsung's second offer, which was made after the complaint was filed in this case, was ▮▮▮▮ plus ▮▮▮▮ for a total of ▮▮▮▮," where "the plus ▮▮▮▮ was an additional payment that Samsung would make if Techiya was paid by Apple." Mar. 26 Trial Tr. at 206:11–25; 207:6–20. Samsung did not object to the disclosure of the offer amounts or make any effort to seal the courtroom during Mr. Injung Lee's testimony.

As detailed in the table below, several other witnesses also testified in open court regarding the amounts of the offers exchanged between Samsung and Synergy, as well as the contents of several other communications exchanged among Samsung, Synergy, and Techiya during that same timeframe. Again, Samsung did not object to disclosure of offer amounts by any of these witnesses, nor did Samsung make any attempt to seal the courtroom when any such testimony was elicited.[2]

---

[2] This table does not address the portions of the transcript that are currently "sealed" pursuant to the Court's prior orders. *See* Dkts. 844 & 850; Mar. 26 Trial Tr. at 101:22–121:9; Mar. 27 Trial

5

| Transcript | Pages | Witness | Elicited | Sealed | Objected |
|---|---|---|---|---|---|
| Mar. 26 | 190–191 | Injung Lee | **Samsung - Direct** | No | No |
| Mar. 26 | 205–207 | Injung Lee | Techiya - Cross | No | No |
| Mar. 27 | 69–70, 74, 76, 79–80 | Dr. JP Keady | Techiya - Direct | No | No |
| Mar. 27 | 128–129, 133 | Dr. JP Keady | **Samsung - Cross** | No | No |
| Mar. 27 | 163–164 | Brian Firestone | Techiya - Direct | No | No |
| Mar. 27 | 226 | YS Kim | Techiya – Dep. | No | No |
| Mar. 27 | 279 | N/A | Techiya Closing | No | No |

For these reasons alone, the Court should reject Samsung's attempt to seek after-the-fact redactions to testimony introduced in open court. Indeed, in *Kroy IP Holdings, LLC v. Safeway, Inc.*, Safeway sought to redact various information that had been disclosed in open court. 2015 WL 432012, at *1. The court noted that, where some of that information "was introduced into the record by Safeway's counsel without any suggestion that it was sensitive or confidential," that fact "cast[ed] doubt on Safeway's present claim that failing to redact that material from the transcript would be significantly damaging to Safeway." *Id.* at *2.

The same is true here. Samsung first introduced into the record the amounts of Synergy's offers to Samsung for a sublicense to Techiya's patents, "without any suggestion" that this information "was sensitive or confidential." *See* Mar. 26 Trial Tr. at 190:13–191:11. Nor did Samsung object or otherwise seek to protect from public disclosure the amounts of Samsung's offers to Synergy for a sublicense to Techiya's patents. Mar. 26 Trial Tr. at 206:11–25; 207:6–20.

II.  **THE INFORMATION THAT SAMSUNG SEEKS TO REDACT IS ESSENTIAL TO THE PUBLIC TO UNDERSTAND AND EVALUATE THE TRIAL RECORD.**

Even if Samsung had moved to seal the courtroom during trial (it did not), its request to redact the offer amounts would still have warranted denial because the information is essential to understand and evaluate the parties arguments and thus the public has a significant interest therein.

---

Tr. 281:5–286:23. Techiya reserves the right to move to "unseal" those portions of the trial transcripts at a later date.

The fact that Samsung, prior to its decision to file counterclaims, not only freely negotiated with Synergy without written objection of any kind for ten months, but also made offers of ▮ and then ▮ dollars to Dr. Ahn, an individual who Samsung purportedly believed was acting "improper[ly] and violat[ing] his duties against his former client Samsung," directly contradicts Samsung's narrative in this action. *See e.g.*, Mar. 26 Trial Tr. at 185:1–24; Mar. 26 Trial Tr. at 206:11–25; 207:6–20.

The offer amounts are also imperative to understand Techiya's positions at trial, as well as the actions of its witnesses. For example, Techiya's witnesses testified that they were "frustrated" and "insulted" by Samsung's offers because the offer amounts did not align with their understanding of the value of their patents. *See, e.g.*, Mar. 27 Trial Tr. at 75:24–76:8, 163:15–164:14. That testimony can best be evaluated if the actual offer amounts are disclosed.

The offer amounts are also necessary to understand Techiya's belief that Samsung was not acting in good faith during the negotiation process, was indeed dragging its feet until a complaint got filed, and actually sought to use its past relationship with Synergy's principals for its own benefit—namely, to pay less than Techiya's patents were worth. For example, in response to questions from Samsung's counsel on redirect, Mr. Injung Lee testified in open court that Techiya's patents represented "a big exposure" to Samsung. Mar. 26 Trial Tr. at 209:21–210:4. Mr. Injung Lee's testimony was consistent with that of Samsung's other witnesses. *See, e.g.*, Mar. 26 Trial Tr. at 117:1–9. And Mr. Y.S. Kim, who was the head of Samsung's licensing group and was extensively involved in Samsung's negotiations with Synergy, knew that it was Dr. Ahn's "intention to license Samsung at a favorable rate." Mar. 27 Trial Tr. at 225:16–19. The actual offer amounts from Samsung are necessary to understand the import of this testimony to the case.

7

For the foregoing reasons, "the public interest" outweighs any purported interest Samsung has in redacting its offer amounts. *In re Violation of Rule 28(d)*, 635 F.3d at 1357.

### III. SAMSUNG HAS NOT SHOWN THAT PUBLIC DISCLOSURE OF THE OFFER AMOUNTS EXCHANGED BETWEEN SYNERGY AND SAMSUNG WILL PUT SAMSUNG AT A COMPETITIVE DISADVANTAGE.

Finally, Samsung has not carried its burden of overcoming the "strong presumption" of public access to the offer amounts exchanged between Synergy and Samsung. Nor could it.

As an initial matter, the presentation of this information in open court, with Samsung taking no contemporaneous action to protect the information from disclosure, "casts doubt on [its] present claim that failing to redact that material from the transcript would" cause Samsung any competitive disadvantage. *Kroy IP Holdings, LLC*, 2015 WL 432012, at *2; *see also Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, 2008 WL 11411333, at *2 (E.D. Tex. June 27, 2008) (denying motion to redact transcript where "parties made every statement in question in open court" and recognizing that "[b]y placing the information in the public domain in open court, the parties must be presumed to have concluded that their clients' or the public's interests were being served").

There is also no substance to Samsung's claims of harm. Indeed, the evidence at trial contradicts those claims. As the record shows, Samsung does not have any set guidelines, policies, or practices as to how to develop a licensing offer. Mar. 27 Trial Tr. at 221:14–17; 221:21–222:5; 225:12–15. Instead, Samsung evaluates, decides whether or not to take a license, and develops any licensing offers based on the specific facts of each separate licensing opportunity. Mar. 27 Trial Tr. at 221:8–13. Indeed, the acceptable range of royalty rates Samsung is willing to pay depends on the specific facts of each case, Mar. 27 Trial Tr. at 221:18–20, and Samsung's counteroffers also depend on, and can differ from case to case based on, the "subjective input" of particular case managers who put together the particular counteroffer, Mar. 27 Trial Tr. at 225:4–11. Accordingly,

8

the offers exchanged between Samsung and Synergy relating to Techiya's patents have no bearing on what Samsung may offer to another patent owner with respect to other patents.

Perhaps for this reason, in its Motion, Samsung did not even attempt to show "compelling reasons supported by specific factual findings" as to why the offer amounts exchanged between Samsung and Synergy should be redacted from the trial transcript. Tellingly, Samsung instead only cites cases in which other courts have sealed pricing and payment terms contained in executed licensing agreement, and asserts, without support, that public disclosure of the offers exchanged between Samsung and Synergy might place Samsung at a competitive disadvantage. Mot. at 1–2. But "[s]uch general assertions of prospective harm are not sufficient to satisfy the requirement that a compelling showing be made to support a redaction or sealing order, particularly when the information already has been disclosed in open court." *Kroy IP Holdings*, 2015 WL 432012, at *3.

Setting aside Samsung's failure to provide any particularized reasons as to why the offer amounts disclosed in open court should be redacted after the fact, the cases Samsung cites in support of its position also are inapposite. For example, in *Cellular Communications Equipment, LLC v. Apple, Inc.*, 2017 WL 10311215 (E.D. Tex. Jan. 5, 2017), the court granted Cellular Communications' motion to seal only the exhibits discussing "license agreements and negotiations" that "were introduced and used only after the Court granted [Cellular Communications'] request to seal the courtroom." *See* Plaintiff's Unopposed Motion to Seal Certain Trial Exhibits and Portions of the Closing Arguments, *Cellular Commc'ns Equip. LLC v. Apple Inc.*, No. 6:14-cv-00251-KNM, ECF No. 336 at 2–4 (E.D. Tex. Oct. 14, 2016). Here, Samsung seeks to redact testimony given in open court. And while Samsung claims that "no public parties were present in the Courtroom, only Court personnel and the parties participating in the

9

trial," Mot. at 1, Samsung fails to explain how it can make that representation when there is no record of who was in the courtroom when the offers were discussed.

Nor does *Apple Inc. v. Samsung Electronics Co.*, 2012 WL 3283478 (N.D. Cal. Aug. 9, 2012), *overruled on other grounds*, 727 F.3d 1214 (Fed. Cir. 2012), provide support for Samsung's Motion. In *Apple Inc. v. Samsung Electronics Co.*, the court sealed only the payment terms that were included in licensing agreements that had previously been executed by or with third parties. *Id.* at *6, *10. The court did not, as Samsung requests here, seal offers exchanged prior to the execution of a licensing agreement. In fact, the court did the opposite, expressly denying Samsung's request to seal "proposed royalty rates for a licensing agreement between Apple and Samsung." *Id.* at *9. Moreover, in *Apple Inc. v. Samsung Electronics Co.*, the parties filed declarations in support of their respective motions to seal that "described the harm they would suffer" if the information the parties sought to have sealed "were made public and therefore available to their competitors and suppliers." 727 F.3d at 1224. Here, Samsung did not identify how public disclosure of offers made during negotiations that did not result in an executed agreement would put Samsung at a competitive disadvantage during future licensing negotiations.

Indeed, there is no set practice for Samsung to develop licensing offers, and the amount of each Samsung licensing offer is entirely dependent on the unique set of circumstances presented by a specific set of patents, which unique circumstances in this case Mr. Injung Lee confirmed were, at least in part, related to a patent analysis that Samsung continuously updated and changed. Mar. 26 Trial Tr. at 206:19–22, 207:21–208:6, 208:13–21. Accordingly, there can be no credible argument that disclosure of the offer amounts exchanged between Samsung and Synergy would put Samsung at a competitive disadvantage in future licensing negotiations with third parties.

## CONCLUSION

For the foregoing reasons, the Court should deny Samsung's Motion.

| | |
|---|---|
| Dated: May 3, 2024 | Respectfully submitted,<br><br>By: */s/ Melissa C. Pallett-Vasquez*<br>Melissa C. Pallett-Vasquez (*pro hac vice* Dkt. 331)<br>mpallett@bilzin.com<br>Matthew Tieman (*pro hac vice* Dkt. 329)<br>mtieman@bilzin.com<br>**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**<br>1450 Brickell Avenue, Suite 2300<br>Miami, Florida 33131-3456<br>Telephone: (305) 374-7580<br>Facsimile: (305) 374-7593<br>Email: stapanes@bilzin.com<br>Email: eservice@bilzin.com<br><br>Jennifer L. Truelove<br>State Bar No. 24012906<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street, Suite 300<br>Marshall, Texas 75670<br>Telephone: (903) 923-9000<br>Facsimile: (903) 923-9099<br>Email: jtruelove@mckoolsmith.com<br><br>Bradford A. Cangro (Admitted in TXED)<br>bradford.cangro@pvuslaw.com<br>Robert J. Gaybrick (*pro hac vice* Dkt. No. 3)<br>robert.gaybrick@pvuslaw.com<br>Roger D. Taylor (Admitted in TXED)<br>roger.taylor@pvuslaw.com<br>Jacob A. Snodgrass (Admitted in TXED)<br>jacob.snodgrass@pvuslaw.com<br>Ghee J. Lee (Admitted in TXED)<br>ghee.lee@pvuslaw.com<br>Jeremy D. Peterson (Admitted in TXED)<br>jeremy.peterson@pvuslaw.com<br>Jing Zhao (*pro hac vice* Dkt. No. 347)<br>jing.zhao@pvuslaw.com<br>**PV LAW LLP**<br>5335 Wisconsin Avenue, N.W., Suite 440<br>Washington, D.C. 20015<br>Telephone: (202) 371-6861<br>Facsimile: (202) 888-3163 |

Elizabeth Day (Admitted in TXED)
eday@bdiplaw.com
Michael E. Flynn-O'Brien (Admitted in TXED)
mflynnobrien@bdiplaw.com
Aden Allen (Admitted in TXED)
aallen@bdiplaw.com
Robin K. Curtis (Admitted in TXED)
rcurtis@bdiplaw.com
Li Guo (*pro hac vice* Dkt. No. 345)
lguo@bdiplaw.com
Aaron R. Hand (Admitted in TXED)
ahand@bdiplaw.com
Jerry D. Tice II (Admitted in TXED)
jtice@bdiplaw.com
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744

*Counsel for Staton Techiya, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2024 a true and correct copy of the above and foregoing document has been delivered to all counsel of record.

By: */s/ Melissa C. Pallett-Vasquez*
Melissa C. Pallett-Vasquez